614 A.2d 717

**Michael WINKELMAN, Appellant,**

**v.**

**PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN.**

Superior Court of Pennsylvania.

Argued June 16, 1992.

Filed Sept. 10, 1992.

Barry S. Yaches, Jenkintown, for appellant.
Thomas P. Kelly, Philadelphia, for appellee.

Before ROWLEY, President Judge, and HUDOCK and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from a declaratory judgment entered in favor of appellee, Pennsylvania Financial Responsibility Assigned Claims Plan (hereinafter PFRACP). Appellant, Michael Winkelman, presents the following issues for our review: (1) whether the Motor Vehicle Code requires a motor vehicle, which is not exempted from the registration provisions of the code, to be registered even though the vehicle is not driven or moved upon a highway, and if so, (2) whether the vehicle must be insured pursuant to the financial responsibility provisions of the Motor Vehicle Financial Responsibility Law. For the reasons set forth below, we affirm the declaratory judgment.

Before addressing the issues raised by appellant, we will briefly recount the relevant facts of this case. In the early morning hours of September 14, 1989, appellant was riding as a passenger in an uninsured motor vehicle owned and operated by his former brother-in-law, Thomas Connelly, when Mr. Connelly's vehicle suddenly collided with a bus operated by the Southeastern Pennsylvania Transportation Authority (SEPTA). Appellant sustained injuries to his hand and lower back as a result of this incident.[1] Although appellant owned an automobile, this vehicle was neither registered nor insured.[2] Consequently, appellant applied to appellee for benefits. Appellee denied appellant's claim because he did not meet the eligibility requirements of 75 Pa.C.S.A. § 1752(a)(3).

1. Specifically, appellant cut his hand in the accident. Deposition of Michael Winkelman, 1/8/91 at 14. Appellant additionally claims that he has suffered from chronic lower back pains which require him to constantly wear a back brace while he works. *Id.* at 18–22.

2. The certified record indicates that appellant purchased the car prior to the accident and that he merely held title to the car. Deposition of Michael Winkelman, 1/8/91, at 33–34. After he bought the vehicle, appellant discovered that it would require a substantial amount of work and sold it to a junk dealer. *Id.* 31 and 36–37. Appellant did not register the car with the Commonwealth and indicated that he never drove it after its purchase. *Id.* at 36. Appellant was uncertain as to whether he still had this car in his possession when he was injured. *Id.* at 30–31.

Appellant thereafter filed a complaint seeking declaratory relief as to his entitlement to benefits under the assigned claims plan. Cross-motions for summary judgment were filed by both parties but were denied by the lower court. An opinion announcing the decision of the trial court in favor of appellee was subsequently issued. This timely appeal followed.

As a preliminary matter, we are compelled to comment upon the procedural irregularities in this case as they affect our ability to reach the merits of the appeal. We must first ascertain whether appellant has preserved his claims for review despite the fact that no post-trial motions were filed in the lower court. With regard to this question, we observe that appellant initiated a declaratory judgment action. The procedural rule governing actions of this type directs that the practice and procedure in such cases shall follow, as nearly as may be, the rules governing an action in equity. Pa.R.C.P., Rule 1601(a), 42 Pa.C.S.A.

In describing the equity practice and procedure, the applicable rules require the lower court to make an adjudication which consists of: (1) a statement of the issues; (2) a closely condensed chronological statement of the findings of fact which are necessary to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law; and (4) a decree *nisi*. Pa.R.C.P., Rule 1517(a), 42 Pa.C.S.A. After the adjudication and decree *nisi* have been filed, the parties may then challenge the decree and the factual findings by filing appropriate post-trial motions. *See* Pa.R.C.P., Rule 227.1, 42 Pa.C.S.A. (governing post-trial practice following the entry of a decision by the trial court in a trial without a jury or in an equity trial). Upon the disposition of post-trial motions, the decree *nisi* is entered as a final decree. *See* Pa.R.C.P., Rule 227.4, 42 Pa.C.S.A. The order providing for the entry of the final decree is the final order which can then be reviewed on appeal.

As applied here, we observe that the trial court filed an opinion instead of the adjudication and decree *nisi* required by

Rule 1517(a), *supra.* Under similar circumstances, this court has excused the parties' failure to file post-trial motions. *See Daley–Sand v. West American Insurance Co.,* 387 Pa.Super. 630, 636, 564 A.2d 965, 968 (1989) (holding that the appellant's failure to file exceptions did not defeat appellate review where the trial court filed an order and opinion rather than an adjudication and decree). We therefore conclude that appellant's failure to file exceptions or post-trial motions does not prevent us from reaching the merits of his claims.

■ In addition to the lack of a proper adjudication and decree, the trial court failed to enter a final order or decree which expressly directs the entry of judgment in favor of appellee. Ordinarily, we would remand to the lower court for the entry of a proper final order or decree. *See* Pa.R.A.P., Rule 902(a), 42 Pa.C.S.A. (permitting an appellate court to remand for the completion of a procedural step which has been omitted). However, our Supreme Court has indicated that for procedural omissions of this type, the interests of justice require us to " 'regard as done that which ought to have been done.' " *McCormick by McCormick v. Northeastern Bank of Pennsylvania,* 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n. 1 (1989) (citation omitted). Because it is clear from the record that the trial court intended to enter a final judgment in favor of appellee but inadvertently neglected to do so, we will overlook this technical defect. *Summit Fasteners, Inc. v. Harleysville National Bank & Trust Co., Inc.,* 410 Pa.Super. 56, 59 n. 1, 599 A.2d 203, 205 n. 1 (1991) (in which this court applied the directives of *McCormick* and proceeded to entertain the appeal despite the fact that a final order had not been entered).

■ Because a declaratory judgment action follows as nearly as may be the practice and procedure in an equity action, we will review the lower court's determination in the same manner as we would an equity decree. *Clearfield Volunteer Fire Department v. BP Oil, Inc.,* 412 Pa.Super. 29, 31, 602 A.2d 877, 878 (1992), *citing Supp v. Erie Insurance Exchange,* 330 Pa.Super. 542, 544, 479 A.2d 1037, 1038 (1984). Our scope of review is as set forth as follows:

A [declaratory] judgment of a trial court will not be reversed absent a clear abuse of discretion or error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence, we may not substitute our judgment for that of the trial court.

*Clearfield Volunteer Fire Department v. BP Oil, Inc.,* 412 Pa.Super. at 31, 602 A.2d at 879 (citations omitted). *Accord Supp v. Erie Insurance Exchange,* 330 Pa.Super. at 544, 479 A.2d at 1038. We will evaluate appellant's claims and the decision of the lower court in accordance with these principles.

In his first and second issues, appellant contends that he was not required to register his vehicle and that he was not required to insure his properly unregistered vehicle. These claims are actually sub-issues of the larger question as to whether appellant is eligible to receive benefits from appellee. Because the analysis of these matters is inextricably intertwined, they will be addressed together.

We begin with a review of the relevant provisions of the Motor Vehicle Financial Responsibility Law (MVFRL), *codified at* 75 Pa.C.S.A. §§ 1701–1799.7. Subchapter E of the MVFRL relates to the assigned claims plan which provides benefits to individuals who are injured in an automobile-related accident and who are not otherwise entitled to receive insurance benefits. *Jackson v. Travelers Insurance Co.,* 414 Pa.Super. 336, 338, 606 A.2d 1384, 1385 (1992). Section 1752(a) of subchapter E defines the class of individuals who are eligible to receive benefits under the assigned claims plan and provides, in relevant part, that

[a] person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements: ... (3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles)....

75 Pa.C.S.A. § 1752(a)(3). As made clear by this particular provision, an eligible claimant cannot be an owner of a motor

vehicle that is required to be registered.[3] Thus, appellant would be eligible for benefits if he could demonstrate that he was not the owner of a motor vehicle that was required to be registered. In this case, there is no question that appellant was the owner of a motor vehicle. Trial Court Opinion, filed 11/18/91, at 3. Appellant does not dispute this finding. Rather, appellant argues that his motor vehicle was not of the type that was required to be registered. We will therefore confine our discussion to this particular claim.

In interpreting the phrase "required to be registered" this court has indicated that it refers to all vehicles which have not been exempted from registration under 75 Pa.C.S.A. § 1302. *Riley v. Travelers Insurance Co.*, 390 Pa.Super. 179, 183, 568 A.2d 253, 255 (1990), *allocatur denied*, 527 Pa. 649, 593 A.2d 421 (1990). Although this interpretation was made with respect to § 1752(a)(7), it is a well-settled principle of statutory construction that a word or phrase used in one place in a statute will be construed to mean the same when it is used elsewhere in the same statute. *Delaware County Mortgage & Finance Co. v. Board of Commissioners of Delaware County*, 168 Pa.Super. 143, 149, 77 A.2d 746, 749 (1951); *Commonwealth v. Saul*, 346 Pa.Super. 155, 161, 499 A.2d 358, 360 (1985). Accordingly, we will interpret the phrase "required to be registered" found in § 1752(a)(3) in the same manner as that found in § 1752(a)(7). We must therefore turn to Chapter 13 of the Motor Vehicle Code to examine the registration requirements.

The Motor Vehicle Code provides that "[n]o person shall drive or move and no owner shall knowingly permit to be driven or moved upon any highway any vehicle[4] which is not

---

3. An owner is defined under the Motor Vehicle Code as "[a] person, other than a lienholder, having the property right in or title to a vehicle...." 75 Pa.C.S.A. § 102. A motor vehicle is classified as "[a] vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but not operated upon rails." *Id.*

4. The Motor Vehicle Code defines a vehicle as "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks." 75 Pa.C.S.A. § 102.

registered in this Commonwealth unless the vehicle is exempt from registration." 75 Pa.C.S.A. § 1301(a) (footnote added). Section 1302 identifies nineteen different types of vehicles or classes thereof which are exempt from the registration requirement. None of these categories applies to appellant's vehicle and appellant does not argue that his vehicle falls within any of the identified exceptions. Instead, appellant suggests that he was not required to register his vehicle because he did not use his car on the highways and refers us to *Edkins v. Travelers Insurance Co.*, 18 Lycoming County Reports 10 (1989) in support of this proposition.

The holding expressed in *Edkins*, which appellant now urges us to adopt, is that a vehicle need not be registered or insured where it is neither actually driven nor intended to be driven on a highway. *Edkins*, at 11–12. *Edkins* is not binding precedent on this court and we do not find the conclusion set forth therein to be particularly persuasive because the trial court reached its disposition without any attempt to analyze the relevant provisions of the MVFRL or the authorities which interpret it. Further, the result reached in *Edkins* and similar cases [5] is contrary to the decisions of this court in which we have repeatedly rejected similar arguments. *See, e.g., Riley v. Travelers Insurance Co.*, 390 Pa.Super. at 183, 568 A.2d at 254–255 (concluding that a motorized pedalcycle was a motor vehicle that was required to be registered, and that the inoperability of the motor did not affect this requirement). *See also Kresge v. Keystone Insurance Co.*, 389 Pa.Super. 548, 551–552, 567 A.2d 739, 740–741 (1989) (finding that lack of use or inoperability of a registered vehicle did not absolve a claimant from obtaining insurance for that vehicle) and *Allen v. Erie Insurance Co.*, 369 Pa.Super. 6, 12, 534 A.2d 839, 841 (1987) (holding that the driveability or operability of a vehicle is not a relevant consideration in determining whether a claimant is eligible to receive first-party benefits). Notwithstanding appellant's reliance upon *Edkins*, we find the correct

5. *See, e.g., Mengel v. Travelers Insurance Co.*, 80 Berks County Law Journal 160, 161 (1988) (in which the trial court determined that a vehicle which is not being moved upon the highway is not required to be registered).

approach to be set forth in *Blair v. Travelers Insurance Co.,* 8 Pa.D. & C.4th 157, 160 (1990), *affirmed* ―― Pa.Super. ――, 613 A.2d 25 (1992) (*per curiam* unpublished memorandum) (in which the trial court examined the relevant provisions of the Motor Vehicle Code and the MVFRL, as well as this court's prior decisions in *Kresge* and *Allen,* and concluded that vehicles which were inoperable or not actually driven were not exempt from the registration requirements).

More importantly, if the legislature had clearly intended to excuse inoperable or unused vehicles from the registration requirements it could easily have done so. The fact that these items have not been specifically included among the nineteen enumerated exceptions leads us to conclude that the legislature did not intend to exempt inoperable motor vehicles or vehicles which their owners do not intend to drive or move on the highways from registration. *See, e.g., Henrich v. Harleysville Insurance Companies,* 403 Pa.Super. 98, 103–104, 588 A.2d 50, 52–53 (1991), *allocatur granted,* 528 Pa. 611, 596 A.2d 157 (1991) (applying the maxim of statutory construction *"expressio unius est exclusio alterius," i.e.,* the mention of one thing in a statute implies the exclusion of others not expressed).

We therefore reject appellant's suggested interpretation of the Motor Vehicle Code and hold that all vehicles must be registered and insured by their owners, regardless of their operability or intended usage by their owners, unless they specifically fall within one of the duly authorized exemptions. Because appellant's vehicle was of the type that was required to be registered under the registration provisions of Chapter 13 of the Motor Vehicle Code and because appellant owned the motor vehicle at the time his claim arose, he is ineligible to receive benefits under the PFRACP.[6]

Judgment affirmed.

6. Our conclusion is further supported by the amendments to the eligibility requirements of the assigned claims provision of the MVFRL. As originally enacted, § 1752(a)(3) provided that a person was eligible to recover benefits from the assigned claims plan if he or she was "not an owner of a currently registered motor vehicle subject to this chapter."

Act of February 12, 1984, P.L. 26, No. 11, § 3. Under this version of the statute, an individual who owned an unregistered vehicle would have been eligible for benefits under the assigned claims plan. However, a companion bill enacted on the same day amended this language to its present form by specifically deleting the reference to "a currently registered vehicle" and replacing it with "a motor vehicle required to be registered under Chapter 13." *See* Act of February 12, 1984, P.L. 53, No. 12, § 3.

Although the legislative history is silent as to the General Assembly's reasons for amending this provision, the remarks reveal that the legislature was concerned with the problem of motorists failing to purchase insurance and that the companion bill was enacted to correct deficiencies in the MVFRL. *See* Senate Legislative Journal, No. 72, 167th General Assembly, Vol. II, at 1142–1154 (October 4, 1983) and No. 4, 168th General Assembly, Vol. I, at 1582–1587 (January 25, 1984); House Legislative Journal, No. 98, 167th General Assembly, Vol. III, at 2138–2191 (December 13, 1983), No. 99, 167th General Assembly, Vol. III, at 2232–2251 (December 14, 1983) and No. 10, 168th General Assembly, Vol. I, at 165–171 (February 8, 1984). Further, it is a rule of statutory construction that "[a] change in the language of a statute ordinarily indicates a change in legislative intent." *Masland v. Bachman*, 473 Pa. 280, 289, 374 A.2d 517, 521 (1977) (citations omitted). *Accord Lookenbill v. Garrett*, 340 Pa.Super. 435, 443, 490 A.2d 857, 861 (1985). We must therefore presume that by amending the statute the legislature intended to exclude individuals who own an unregistered vehicle from receiving benefits from the assigned claims plan.