## GARY BARBERA DODGE, INC.

v.

## COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on briefs June 30, 1995.

Decided Oct. 19, 1995.

Publication Ordered Feb. 1, 1996.

---

**19.** When asked to point to the individual who he had seen in the parking lot and who had approached him and Bastian, Volinski motioned to one of the defense attorneys.

David R. White, Assistant Counsel, for Appellant. Timothy P. Wile, Assistant Counsel In–Charge, for Appellant.

Lawrence R. Wieder, for Appellee.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The Department of Transportation, Bureau of Motor Vehicles (DOT), appeals an order of the Court of Common Pleas of Philadelphia County, which sustained the statutory appeal of Gary Barbera Dodge, Inc. (Dealer).

Dealer is a licensed new and used automobile dealer. As part of its business, Dealer performs title work on the vehicles it sells. On November 19, 1993, DOT notified Dealer that it had, on fifty-nine occasions, filed untimely title applications.[1] DOT provided Dealer with an administrative hearing on the violations on January 13, 1994. On May 13, 1994, DOT issued an order determining that Dealer had committed fifty-seven violations of failing to submit timely title applications to

---

1. Section 1103.1(d) of the Vehicle Code (Code), 75 Pa.C.S. § 1103.1(d), requires title applications for autos purchased from dealers to be to be mailed or delivered to DOT within 20 days of the date of purchase.

DOT in violation of Section 1374(a)(5) of the Code, 75 Pa.C.S. § 1374(a)(5). In that order, DOT imposed fifty-seven separate $200 penalties against Dealer, totalling $11,400.[2] On June 6, 1994, Dealer appealed that order to the trial court, which conducted a de novo hearing.

At the hearing, Dealer presented the testimony of its title clerk, Audrey Brown. Brown testified that Dealer utilized a licensed messenger service,[3] Nelson's Messenger Service (Nelson's), to pick up Dealer's completed title work and then deliver it to DOT. Brown testified that she generally processed the title work in 7 days, but that Nelson's was not timely submitting the title work to DOT. The trial court held that "timely delivery of the documents to an authorized messenger service was tantamount to delivery to DOT...." (Notes of Testimony at 34, Reproduced Record (R.R.) at 40a.)

In sustaining Dealer's statutory appeal, the trial court relied on Section 1374(a)(5) of the Code, 75 Pa.C.S. § 1374(a)(5), which provides in relevant part:

> (a) **Suspension or revocation after opportunity for a hearing.**—The department may impose a monetary penalty for certain violations and offenses ... in any of the following cases when the department finds upon sufficient evidence that:
>
> ....
>
> (5) The registrant has failed to *deliver to a transferee lawfully entitled thereto or the department,* when and as required by this title, a properly assigned certificate of title. (Emphasis added).

Referring to the above section, the trial court stated:

> Why ... would the legislature use language like, deliver to a transferee lawfully entitled thereto or the Department? And I think when they used the word "or," ... they are giving the dealer an option; ei-

ther deliver it to the Department or give it to a licensed ... messenger service.

(Notes of Testimony at 35–36, R.R. at 41a–42a.) The trial court, therefore, sustained Dealer's appeal and this appeal by DOT followed.

On appeal, DOT contends that the trial court misconstrued the law when it held that Dealer's delivery of title applications to Nelson's within 20 days rendered them timely.

DOT argues that the trial court erroneously concluded that, because Nelson's was a licensed messenger service, it qualified as a "transferee" under Section 1374(a)(5) of the Code, 75 Pa.C.S. § 1374(a)(5) and argues that the term "transferee" in that subsection of the Code means the purchaser of the vehicle, and not a messenger service contracted to deliver title documents to DOT in Harrisburg. Dealer, on the other hand, argues that the trial court never held that delivery to Nelson's was delivery to a "transferee," but, instead, determined only that delivery to Nelson's was the equivalent of delivery to DOT. The trial court did not draft an opinion explaining its reasoning; however, under either interpretation of the trial court's rationale, DOT must prevail.

 A section of a statute must be construed with reference to the entire statute and not apart from its context, *Snyder v. Department of Transportation,* 64 Pa. Cmwlth. 599, 441 A.2d 494 (1982), and a word used in one place in a statute will be construed to have the same meaning when it is used elsewhere in the same statute. *Commonwealth v. Maloney,* 365 Pa. 1, 73 A.2d 707 (1950); *Winkelman v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 418 Pa.Superior Ct. 439, 614 A.2d 717 (1992). Furthermore, an administrative agency's interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed

---

**2.** Collectively, the 57 violations at issue in this appeal were Dealer's third offense under Section 1374(a)(5) of the Code. The penalty was imposed under Section 1374(d)(2) of the Code, 75 Pa.C.S. § 1374(d)(2), which states:

> If the department finds that the registrant has violated subsection (a)(5) ... as a third offense, the registrant may be sanctioned with a mone-

tary penalty of not less than $100 and not more than $200 per violation.

**3.** A messenger service is defined as a "person who, for a fee, advertises, offers or provides to the public the service of delivering and obtaining documents to and from [DOT]." 67 Pa.Code § 255.2.

unless clearly erroneous. *Alpha Auto Sales, Inc. v. Department of State, Bureau of Occupational Affairs,* 537 Pa. 353, 644 A.2d 153 (1994).

■ Transfers of vehicle titles are governed by Sections 1102 through 1119 of the Code, 75 Pa.C.S. §§ 1102–1119. Section 1111 of the Code, 75 Pa.C.S. § 1111, describes the duties of a transferor and transferee relative to the transfer of ownership of a vehicle. That Section provides:

> **(a) Duty of transferor.**—In the event of the sale or transfer of the ownership of a vehicle within this Commonwealth, *the owner shall execute an assignment and warranty of title to the transferee in the space provided on the certificate* or as the department prescribes, sworn to before a notary public or other officer empowered to administer oaths, *and deliver the certificate to the transferee at the time of the delivery of the vehicle.*
>
> **(b) Duty of Transferee.**—[T]he transferee shall, within ten days of the assignment or reassignment of the certificate of title, apply for a new title.... (Emphasis added.)

It is clear from the language of Section 1111 that the term "transferor" refers to the seller of a vehicle, and the term "transferee" refers to the purchaser of the vehicle. *Department of Transportation v. Walker,* 136 Pa.Cmwlth. 704, 584 A.2d 1080 (1990).

Further, our review of other Sections of the Code involving titles to vehicles reveals that the term "transferee" means the purchaser or a person who owns a vehicle. For example, Section 1114 of the Code, 75 Pa. C.S. § 1114, indicates that, when a vehicle is transferred by operation of law under various circumstances, the transferee receives the "interest of an owner" in a vehicle. Also, Section 1113 of the Code, 75 Pa.C.S. § 1113, involving transfers to or from manufacturers and dealers, indicates that a "transferee" is a purchaser.

■ Following the rule of construction articulated in *Maloney* and *Winkelman,* we conclude that, because the term "transferee" means the purchaser of a vehicle in various Sections of the Code relevant to the transfer of vehicle titles, it also refers to the purchaser in Section 1374(a)(5).

■ In light of the above, since Nelson's was not the purchaser of the vehicles sold by Dealer, it cannot be a transferee, and under Section 1374(a)(5) of the Code, Nelson's does not qualify as a "transferee lawfully entitled" to accept delivery of title applications.

■ Moreover, no Section of the Code supports the trial court's conclusion that delivery to Nelson's is tantamount to delivery to DOT. While messenger services are licensed by DOT to transact business with it, Section 7501 through 7506 of the Vehicle Code, 75 Pa.C.S. §§ 7501–7506, a messenger service is not authorized under any regulation promulgated by DOT to act as DOT's agent for the purpose of accepting delivery of title documents.[4] Nelson's is a private messenger service Dealer utilized, as a convenience, to deliver documents to DOT. It simply had temporary custody of the title documents for the limited purpose of transporting them to DOT. Hence, we conclude that delivery of a document to a messenger service is not the equivalent of delivery of that document to DOT, and, accordingly, the responsibility for the timely filing of title applications remained with Dealer.

■ Dealer argues, as an alternative basis for affirming the trial court, that the untimely filing of the applications by Nelson's constitutes a "relevant mitigating event" obviating DOT's sanctions. In DOT's May 13, 1994 order imposing sanctions on Dealer, DOT determined that it did not find any mitigating events warranting the exoneration of Dealer. Section 1374(b) of the Code requires DOT, when holding an administrative hearing on whether a dealer violated Section 1374(a)(5) of the Code, to consider relevant mitigating events. The discretion to consider mitigat-

---

4. We note that 67 Pa.Code § 255.5a allows a messenger service to participate in the "decentralized service program." Such a messenger has the authority to issue, on behalf of DOT, temporary learner's permits, registration renew-als, and driver's license renewals. 67 Pa.Code § 255.2. Messengers in the decentralized service program, however, are not given the authority to receive documents on DOT's behalf.

**1190**

ing events is expressly granted by Section 1374(b) to DOT, and DOT's decision on that question should not be reversed absent an abuse of discretion.

■ The term "relevant mitigating event" is defined as "something that is beyond the control of motor vehicle dealer, that is significant and of such a nature that it moderates and lessens the consequences of the late title submissions." *Philadelphia Honda, Inc. v. Department of Transportation,* 666 A.2d 349, 352 (Pa.Cmwlth., 1995). Examples of relevant mitigating events include a dealership fire or an illness or injury to critical dealer personnel. *Id.* Unlike the aforementioned examples, however, Nelson's errors were not beyond the control of Dealer, since Dealer chose to contract with Nelson's to deliver title documents to DOT and could have monitored its performance. Regardless of Nelson's neglect in this matter, Dealer remained ultimately responsible under Section 1103.1 of the Code for the timely delivery of the documents to DOT. We, therefore, conclude that DOT did not abuse its discretion in determining that Dealer's untimely filing of title documents, caused by Nelson's, did not constitute a relevant mitigating event.[5]

Accordingly, the trial court's order is reversed and DOT's order imposing the $11,400 fine on Dealer is reinstated.

### ORDER

NOW, October 19, 1995, the order of the Court of Common Pleas of Philadelphia in the above-captioned matter is hereby reversed.

---

**5.** Dealer argues that the scope of review articulated in *Pennsylvania State Police, Bureau of Liquor Enforcement, v. Cantina Gloria's Lounge,* 536 Pa. 254, 639 A.2d 14 (1994), applies here and, under that decision, the trial court had the power to override DOT's decision to sanction it. However, the scope of review in *Cantina Gloria's* applies only to liquor enforcement appeals and is inapplicable in this case.

Also, Dealer argues that DOT did not meet its burden of proving that the fine of $200 per violation, the maximum allowed under Section 1374 of the Code, was proper. Dealer believes that the fine should be reduced to $100 per violation, the minimum fine, and that this Court should issue an order so modifying the fine. This issue, however, was not raised before the trial court and is being raised for the first time on appeal. It is therefore waived. Pa.R.A.P. 302.