**Williams v. Roberts**

C.P. of Delaware County, no. 93-6919.

*Bruce L. Neff,* for plaintiffs.
*Andrew J. Forbes,* for defendants.

HAZEL, *J.,* July 14, 1997—Plaintiffs filed suit in the above-captioned matter as a result of a car accident between defendants and plaintiffs that occurred on June 16, 1991. (N.T. 1/5/95 p. 32.) Plaintiff Harriet Williams' husband was driving a vehicle in which plaintiffs Harriet and Tanasia Williams were passengers.[1] There was a

---

1. Although Tanasia Williams was a plaintiff in this action, her claim is not the subject of this appeal.

dispute as to whether plaintiff, a passenger in the uninsured car titled to her husband, was considered an owner for purposes of recovering full tort damages pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law.

The jury found that Ms. Williams was an owner (therefore being subject to limited tort) and had suffered no serious bodily impairment. (N.T. 1/5/95 pp. 140-42, 240.) Post-trial motions were filed addressing the issue of ownership and were subsequently denied by this court. Plaintiff appealed, thus necessitating this opinion.

On appeal, plaintiff makes the following allegations of error:

(1) The trial court erred in misallocating the applicable burden of proof in charging the jury on the issue of vehicle ownership.

(2) The verdict was against the weight of the evidence in that the jury made an erroneous determination that plaintiff Harriet Williams was the owner of vehicle.

## PLAINTIFFS' STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

With respect to the first claim of error, plaintiff is essentially claiming that defendant should have had the burden of proving that plaintiff was an "owner" and that the court should have instructed the jury accordingly.

However, the law is clear in Pennsylvania that plaintiff waived this issue by failing to object to the charge, as given, at trial. The charge given by this court before trial commenced regarding the burden of proof was as follows:

"In a civil case such as this, the plaintiffs have the burden of proving those claims or contentions which

entitle them to relief. In some instances the defendant may also have a burden of proof. Whether or not the defendant has a burden of proof will depend upon the facts and circumstances of each case. If the defendant bears a burden of proof in the case, I'll tell you that at an appropriate time. . . ." (N.T. 1/4/95 pp. 99-101.)

In addition, the court gave the following charge prior to deliberation with respect to determining ownership of the car:

"I mentioned to you just before the attorneys made their closing statements on this issue to you, that in accordance with the law applicable in Pennsylvania, in this case, before any other issues are addressed, you have to decide whether the plaintiff, Harriet Williams, was an owner of the vehicle involved in the accident of June 16, 1991. For purposes of the law applicable in this case, one can be considered to be an owner of a motor vehicle even though the vehicle is titled in someone else's name. Although who is the titled owner is, indeed, a factor that you may consider in determining whether one is an owner of a motor vehicle. In accordance with the law that's applicable in this case, one can be an owner of a motor vehicle if they have what the law calls a cognizable, a fancy word for recognized, property right. And—okay? And what they call de facto indicia—indicia means indication—of ownership, all right? Now, an actual, cognizable property right, okay? A property right is there—can be a property interest that one spouse has in the property of another, under matrimonial property law. Indeed, in this case, since the vehicle was purchased after marriage, there is, indeed, an actual, cognizable property right on the part of the plaintiff, Harriet Williams, in the vehicle involved in the accident June 16, 1991. However, that does not answer the question. That's

just one thing that you consider. Remember, it was a de facto indicia of ownership? So you're going to have to decide and find by a fair preponderance of the credible evidence, as I've defined that for you, whether or not there was de facto indicia, or indications of ownership on the part of the plaintiff, Harriet Williams.

"Now, among the factors that you may consider in making this determination are these. And, again, these are sort of common sense. In whose name was the vehicle titled? Did Harriet Williams operate the vehicle? And if so, how frequently did she operate that vehicle? Did Harriet Williams have a driver's license or license permit? Did Harriet Williams reside with the titled owner of the vehicle, and what was the relationship between Harriet Williams and the titled owner of the vehicle? Was the vehicle used for the sole and/or joint benefit of Harriet Williams? And if so, with what frequency, and under what circumstances? Did Harriet Williams have her own set of keys to the vehicle? Did anyone other than the titled owner of this vehicle operate that particular vehicle for the sole or joint benefit of Harriet Williams? Who purchased the vehicle, and whose funds were used to purchase the vehicle? What were the circumstances or reason the vehicle was being used on June 16, 1991? Was anyone else in Harriet Williams' household the titled owner of any other vehicle at the time of the accident? Did Harriet Williams provide for the maintenance and/or care of the vehicle, as well, ladies and gentlemen, as any other evidence which you believe to be relevant on this particular issue?" (N.T. 1/5/95 pp. 129-31.)

After the jury retired to deliberate, the court conducted the following discussion on the record:

"THE COURT: Gentlemen, do you have any objections, amendments, deletions or exceptions to the charge as given by the court? Mr. Neff?

"MR. NEFF: The only issue I would take with the court's charge is that it appears to me that there could be confusion between the difference between being an owner and having the marital interest in the property. And I'm not entirely sure that the charge made that perfectly clear.

"THE COURT: Mr. Forbes?

"MR. FORBES: I have none, thank you.

"THE COURT: I understand your position. I do think the charge is clear. I think that I indicated that you needed both in this matter, that one simply wasn't enough. And I think no matter how many times I say it, I'd have to say both. And I did use the word intentionally an owner as opposed to the owner. So your request, and I assume that's what it is to be, is respectfully denied. . . . [Off the record]" (N.T. 1/5/95 pp. 136-37.)

As demonstrated by the record, plaintiff did not object to the charge as given. If plaintiff had properly objected to the charge and its burden of proof, the court would have been able to correct the charge, if needed. *Takes v. Metropolitan Edison Company,* 548 Pa. 92, 695 A.2d 397 (1997). Because plaintiff failed to object, the alleged error could not be corrected.

It is of interest to this court that before the court charged the jury, the plaintiff made the following statement during his closing argument: "You'll remember when we first started this case that Judge Hazel explained to you the concept of the burden of proof. And he described the burden of proof as a scale. If it tips ever so slightly, one way or the other, that that's how you decide. So at this point I'm going to ask you to keep in mind that scale, because you're going to put on the two sides of that scale is Harriet Williams the owner or an owner of the car, or is she not? And if the scale tips that she is the owner or an owner, then your decision is that she was an owner. And you

come back and tell us that she was an owner. If, on the other hand, the scale tips the other way and there's insufficient indication, or more indication than not that she wasn't an owner or the owner, you're going to decide that. (N.T. 1/5/95 pp. 116-17.) Given this argument to the jury, the lack of a specific jury charge requested by plaintiff and no objection to the charge given by the court, it is evident that plaintiff never thought that the defendant should have the burden of proof with respect to ownership until after the verdict was rendered by the jury and before she filed post-trial motions.

Regardless of the record, at oral argument, plaintiff's counsel stated that, when asked by the court if there was an objection or a requested point for charge with respect to the burden of proof, "I believe the only thing in the record that I saw was I specifically asked your honor for a directed verdict on the issue, because it was my position that the defense had produced no evidence on the issue, at all. It would be my position that whether or not an objection was raised to the manner in which the burden of proof presented to the jury is a non-waivable issue. I don't believe you can waive who has the burden of proof." (N.T. 6/13/95 pp. 6-7.)

However, despite plaintiff's statement that the burden of proof is not a waivable issue, she presented no law to that effect in her post-trial motion and moreover, plaintiff is not focusing on the correct issue, which is whether failing to object to the jury charge renders any alleged error waived, not whether the burden of proof is a waivable issue. Regardless of which issue plaintiff wishes to raise, any alleged error with respect to the jury charge has been waived.

In the case of *Brown v. Philadelphia Tribune Co.*, 447 Pa. Super. 52, 668 A.2d 159 (1995), *alloc. denied,*

544 Pa. 621, 675 A.2d 1241 (1996), *U.S. cert. denied,* 117 S.Ct. 173 (1995), the appellants alleged, in part, that the trial judge gave improper instructions to the jury as to the plaintiff's burden of proof as to each statement in an article alleged to be defamatory.

"The first four of appellants' arguments center around the trial court's failure to properly instruct the jury in its jury charge.

"It is clear under Pennsylvania law that issues not raised below are waived on appeal. Pa.R.A.P. 302(a). This is true even if the issues raised on appeal are of constitutional dimension. . . . Moreover if a party seeks to object to a jury charge, 'specific exception shall be taken to the language or omission complained of.' Pa.R.A.P. 302(b)." *Brown, supra* at 57, 668 A.2d at 161-62. (citation omitted)

As *Brown* makes abundantly clear, an improper instruction to the jury is waived if not specifically objected to, even if the issue is the burden of proof. See also, Pa.R.C.P. 227(b): "Unless specially allowed by the court, all exceptions to the charge to the jury shall be taken before the jury retires. On request of any party all such exceptions and arguments thereon shall be made out of hearing of the jury."

"In addition to a timely specific objection to a trial court's charge to the jury, appellate review may be preserved by submitting 'a specific point for charge.'" *Shaffer v. Pullman Trailmobile,* 368 Pa. Super. 199, 203, 533 A.2d 1023, 1025 (1987).[2] Ms. Williams re-

---

2. Although the case of *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 224, 489 A.2d 1291, 1301 (1985) created a narrow exception to this requirement and states that "[t]he failure to preserve an issue on appeal will be excused only when a strong public interest outweighs the need to protect the judicial system from improperly preserved issues," the Pennsylvania Supreme Court clarified this exception: "aside from capital cases in the domain of criminal law—where

quested the Standard Civil Jury Instruction regarding the burden of proof, 5.50 (Civ.), not a specific charge regarding the burden of proof as to ownership. Therefore, the objection has not been preserved through this alternate method.

Moreover, despite the fact that she requested a directed verdict, plaintiff cannot claim that this request was an objection to the jury charge. The directed verdict was simply a request for the court to determine as a matter of law that Ms. Williams was not considered an owner of the vehicle. A review of the transcript further reveals that the issue of the burden of proof was not directly raised in the request for a directed verdict:

"[side-bar]

"MR. NEFF: Your honor, I had, in the back, when we were back there, expressed an opinion before you had sent this issue to the jury, that it was my belief, based on the current case law, that there was insufficient evidence to even send this issue to the jury. And as a result, that you should decide, or should have decided, as a matter of law, that there was insufficient indicia in this particular case of ownership interest on the part of Harriet Williams, in order to even submit that case, based on the current case law. And I wanted to at least raise that issue as far as the record was concerned.

"FOREPERSON [sic] [MR. FORBES]: Yes, your honor, I expressed my opinion that it's a matter of credibility for the jury, that it properly was submitted.

"THE COURT: I think this has become a question of fact for the fact-finder in this case. There's some

---

a human life is at stake, no fact situations have been presented to us, and none readily comes to mind, where this narrow public interest exception would justify departure from the waiver rule." *McMillen v. 84 Lumber Inc.*, 538 Pa. 567, 571-72, 649 A.2d 932, 934 (1994).

evidence, depending on how the jury views it, that the witness may have admitted to driving a motor vehicle, this particular motor vehicle, shortly before this incident occurred. There was testimony during the course of the trial with respect to the plaintiff's failure to state to counsel during examination at deposition that she had injured certain parts of her anatomy beforehand, before this accident. She gives an explanation with respect to it, but certainly the jury is free to conclude that if someone is—has testified falsely with respect to one issue, they may consider that—they may, they don't have to consider it as relevant on all of the other statements that the plaintiff may have made. I think it does become a question of fact. And I think it's properly left for the jury. Thank you, sir. [End of side-bar]" (N.T. 1/5/95 pp. 138-40.)

This side-bar occurred after the jury was charged and also after the objections to the charge were made. The fact that she requested a directed verdict does not imply that she also objected to the issue of the burden of proof.

Despite this waiver, this issue is crucial to answering the other allegations of error so this court will address the substantive issue regarding the burden of proof. The only aspect of this issue that is clear, however, is that no Pennsylvania appellate court has specifically addressed the issue as to who has the burden of proof.[3]

The applicable statute concerning ownership of a motor vehicle reads as follows:

"An individual who is not an owner of a currently registered private passenger motor vehicle and who is not a named insured or insured under any private pas-

---

3. At oral argument, all counsel conceded that there is no case law with respect to the burden of proof of the particular statute at issue. (N.T. 6/13/95 pp. 11-12.)

senger motor vehicle policy shall not be precluded from maintaining an action for noneconomic loss or economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law." 75 Pa.C.S. §1705(b)(3).

A review of the cases that indirectly address this and similar issues under other provisions of the PaMVFRL has placed the burden on both the plaintiff and defendant. Obviously it is plaintiff's position that defendant must prove ownership, based in part upon the theory that it is difficult to prove a negative, while defendant claims that plaintiff must prove the necessary elements to recover, and not being an owner is one of them.

*Bethea v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 407 Pa. Super. 57, 595 A.2d 122 (1991), the case to which both parties refer extensively, has language that appears to place the burden of proof on the defendant. In *Bethea,* the plaintiff was attempting to collect first party benefits under the assigned claims plan. The car the plaintiff was driving was uninsured, as was the other car involved in the accident and the defendant claimed that the plaintiff was ineligible under the provisions of 75 Pa.C.S. §1752(a)(3).[4]

The question was whether the plaintiff was an owner of the vehicle because the car was registered in her husband's name only and they were living in the same

---

4. 75 Pa.C.S. §1752 (a)(3) states "a person is eligible to recover benefits from the assigned claims plan if the person meets the following requirement: . . . (3) Is not an owner of a motor vehicle required to be registered under chapter 13 (relating to registration of vehicles) . . . ." Although the wording is more precise in this provision, *i.e.* "meets the following requirement," than in 1705(b)(3), in the absence of case law specific to the provision at issue in the present case, this court looks to case law regarding this provision, and others, for guidance.

house, not estranged. The applicable wording of *Bethea* states: "However, even if appellant is found to have a property interest in the vehicle under marital property law, *appellee would still be obligated to show that there exists indicia of ownership which would, consistent with the purpose of the Act, support imputing the obligation to provide financial responsibility to appellant.*" *Id.* at 65, 595 A.2d at 126-27. (emphasis added)

In contrast to *Bethea* is the case of *Winkelman v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 418 Pa. Super. 439, 614 A.2d 717 (1992), *overruled on other grounds in Swartz v. Union Mutual Insurance Co.,* 547 Pa. 632, 692 A.2d 1058 (1997),[5] wherein the court stated that under 75 Pa.C.S. §1752(a)(3), the same section referred to in *Bethea,* "*appellant would be eligible for benefits if he could demonstrate he was not the owner of a motor vehicle that was required to be registered.*" *Winkelman, supra* at 445, 614 A.2d at 720. (emphasis added) See also, *Hodges v. Rodriguez,* 435 Pa. Super. 360, 645 A.2d 1340 (1994): "Mr. Hodges would be eligible for benefits if he could demonstrate that he did not own a motor vehicle that was required to be registered." *Id.* at 367, 645 A.2d at 1343, citing *Winkelman.*[6]

---

5. *Winkelman* held that all vehicles must be registered regardless of an owner's intended usage unless they fall within one of the authorized exemptions. *Swartz* overruled *Winkelman* to the extent that a vehicle need not be registered, much less qualify for an exclusion, if the vehicle does not operate on a highway. However, the wording of *Winkelman* is still beneficial to this court's analysis.

6. The court in *Hodges* also stated "[b]ecause the assigned claims plan had sufficient evidence to suggest that Mr. Hodges was the owner of a motor vehicle required to be registered under chapter 13 at the time of his accident and was, therefore, ineligible to receive

In *Mangum v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 449 Pa. Super. 1, 672 A.2d 1324 (1996), the court stated:

"As appellant was seeking to recover benefits from the assigned claims plan, he bore the burden of producing a sufficient quantum of evidence demonstrating that there were no policies of insurance from which he could recover first party benefits." *Id.* at 7, 672 A.2d at 1327-28.

Finally, in the absence of a case that mandates the shifting of the initial burden of proof, the burden should remain with the plaintiff. The cases are not definitive but the one argument made by plaintiff, that she should not have to prove a negative, was impliedly rejected by the court in *Winkelman.* Furthermore, a review of the factors that are to be considered in *Bethea* and the other cases (as discussed later in this opinion) indicate that the information that must be considered would most likely be obtained from the plaintiff so that the burden falls more easily on her.

Plaintiff's next allegation of error is that the jury's determination was against the weight of the evidence and adds that because there was no affirmative evidence proffered by defendant to prove ownership, this court erroneously denied plaintiffs' motion for a directed verdict. Plaintiff further argues that the credibility determinations are legally insufficient to constitute proof of plaintiff's ownership of a motor vehicle and even if the jury rejected the plaintiff's testimony there was

benefits under section 1752, his claim for benefits was denied. Mr. Hodges, at that point, assumed the burden of going forward and proving that he was indeed an eligible claimant." *Id.* at 375, 645 A.2d at 1348. However, this discussion occurred in the context of the assigned claims plan's initial determination of coverage.

no affirmative evidence produced by defendants to establish plaintiff's ownership of a motor vehicle.

It appears that plaintiff requested judgment as a matter of law before the jury was charged (off the record) and placed his request on the record after the jury reached a verdict but before the verdict was read. (N.T. 1/5/95 pp. 138-40.) While the discussion with respect to this request indicates that the plaintiff had asked for judgment as a matter of law at the close of the defendant's case, plaintiff has alternately called her request a motion for directed verdict and a request for judgment as a matter of law.

Quite simply, plaintiff asked the court to determine, after the close of evidence and as a matter of law, that the plaintiff was not an owner. However, as discussed below, there were credibility determinations to be made by the jury. "It is not within the province of the trial court to weigh conflicting evidence when ruling upon a motion for directed verdict as credibility is a jury question." *Delaware Valley Factors Inc. v. Ronca,* 442 Pa. Super. 609, 612, 660 A.2d 623, 624 (1995). (citations omitted) In fact, a review of the Standard Civil Jury Instruction, which *was requested by the plaintiff,* stands in contrast to plaintiff's position:

"The evidence that the plaintiff made an earlier statement inconsistent with his testimony at this trial may be considered by you not only in your evaluation of that party's credibility but also as evidence of the truth of the contents of the statement bearing upon the facts in issue." Pa.S.S.C.J.I. 2.21. A directed verdict was properly denied.

Moreover, defendant has no duty to produce affirmative evidence because the burden of proof rested with the plaintiff and a reading of *Alberts v. Pennsylvania* Financial Responsibility Assigned Claims Plan, 16

D.&C.4th 243 (1992) lends support to this determination.

In *Alberts,* a non-jury trial was held before the court based upon the pertinent facts testified to by the plaintiff at her deposition which were stipulated to by both parties.

The plaintiff was operating an uninsured car titled in her husband's name and was in an accident. She was denied uninsured motorists benefits and suit was filed.

The court had to resolve the issue of the ownership of the vehicle.

"Alberts' husband purchased the car after the couple was married. Alberts and her husband lived together and Alberts had her own keys to the car as well as unrestricted access to and use of the car. Although Alberts knew the car was uninsured, she used it on a daily basis for personal and familial errands. On days where Alberts' husband worked, he was either picked up by a co-worker or driven to work by Alberts, leaving the car for Alberts' unrestricted use." *Alberts, supra* at 244-45.

The court found that the plaintiff was the constructive owner of the car and was ineligible to receive uninsured benefits.

Of importance in the *Alberts* case is the fact that although the burden of proof is not specifically mentioned, this non-jury trial was based upon stipulated facts from the deposition testimony of the plaintiff and the plaintiff was found to be an owner. In the present case, the only individuals who testified with respect to ownership were Ms. Williams and her daughter. Therefore, it appears that ownership can be determined solely by the plaintiffs' testimony.

Lastly, plaintiff claims that there was insufficient evidence for jury to conclude plaintiff was an owner. Plaintiff claims that the verdict was against the weight of

the evidence and amounts to injustice that "stands forth like a beacon," citing to *Bortner v. Gladfelter,* 302 Pa. Super. 492, 496, 448 A.2d 1386, 1388 (1982), because even if the jury disbelieved plaintiff there was again no affirmative evidence produced by defendant to establish ownership.

Section 102 of the Pennsylvania Vehicle Code defines "owner" as "[a] person, other than a lien holder, having the property right in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security." 75 Pa.C.S. §102.

"We have previously recognized that under this definition there may be both a legal and an equitable owner of a motor vehicle. . . . It follows that section 102 of the [Vehicle] Code does not provide nor intend to provide that title to a motor vehicle shall determine absolute ownership of such. In fact, our research reveals that in Pennsylvania, the certificate of title constitutes no more than some evidence of ownership." *Habbyshaw v. PennDOT,* 683 A.2d 1281, 1282-83 (Pa. Commw. 1996).

The definition of ownership is not limited to "record ownership, or to a technical Divorce Code analysis of marital property rights, but would permit consideration of other 'indicia of ownership.' Such 'indicia of ownership' require that there be an actual cognizable property right in the vehicle, under marital property law, and de facto indicia of ownership." *Id.* at 1283. Factors to consider to determine "de facto indicia of ownership" are: whether the husband and wife resided together at the time of the accident; whether the titled owner spouse allowed the other spouse to drive the vehicle which the other spouse knew to be uninsured; and whether the spouse driving the vehicle was on

a personal errand. *Id.* at 1284. See also, this court's jury charge. (N.T. 1/5/95 pp. 129-31.)

Therefore, given that the car was bought during the marriage, the car is marital property and Ms. Williams had a property right to it, (N.T. 1/5/95 p. 103), this court must review the evidence to determine if the jury could have found that there was sufficient "indicia of ownership" to conclude that Ms. Williams was considered an owner. *Habbyshaw, supra* at 1283.

Plaintiff, and to a very limited extent, her daughter, provided the only evidence with respect to ownership. Assuming defendant did not have the burden of proof, it is clear that the jury disbelieved plaintiff's testimony and therefore concluded plaintiff did not meet her burden of proof of establishing that she did not own the car. Again, if defendant does not have the burden of proof, there is no duty to produce evidence to disprove plaintiff's claim.

The facts regarding ownership and the facts bearing on the plaintiff's credibility were as follows:

Plaintiff's husband owned the car involved in the accident, which was uninsured, and plaintiff's name was not on the title; she was not, in fact, the named owner on any car. (N.T. 1/5/95 p. 34.) Plaintiff did not know when her husband acquired the car, nor did she know where or from whom the car was purchased. (N.T. 1/5/95 pp. 34, 58.) There was no discussion with her husband about the car, she did not look at the vehicle before it was purchased and did not ask her husband about it; he simply bought the car. (N.T. 1/5/95 pp. 58-59.)

Ms. Williams also testified that she rarely communicates with her husband about purchases of cars, televisions and other such items, rather, her husband purchases almost everything without consulting her. (N.T.

1/5/95 p. 59.) Most of the major purchases, the televisions and furniture, were a surprise, so plaintiff's husband bought them himself. (N.T. 1/5/95 p. 59.) The car was also a surprise and Ms. Williams testified that when she gets surprises, she does not ask how they can afford it. (N.T. 1/5/95 pp. 59-60, 64.) When she spends money from her account, she does not discuss it with her husband and when husband spends money, he does not discuss it with her. (N.T. 1/5/95 p. 99.)

Specifically, Ms. Williams did not ask her husband how much he paid for the car, nor question her husband as to whether or not the car was inspected, how many miles were on the car when her husband bought it, nor whether the brakes and lights worked properly. (N.T. 1/5/95 pp. 60-63.)

In addition, Ms. Williams testified that she never drove the car and did not have the keys to the car. The keys to the car are not kept in a specific place in the house but "anywhere in the house." (N.T. 1/5/95 pp. 34, 37.) She did not pay any money for the purchase of the car and was not involved in the registration, maintenance or repair of the car. (N.T. 1/5/95 pp. 34-35.) Furthermore, her husband shopped most of the time "to get the heavy things" and would use whatever car he had at the time. (N.T. 1/5/95 p. 36.) Plaintiff never drove any of the cars. (N.T. 1/5/95 p. 36.) She was not driving the car owned by her husband at the time of the accident and had never driven the car owned by her husband. However, the family would go places in the car together. (N.T. 1/5/95 p. 105.)

Ms. Williams had never held a driver's license in any state as of the date of the accident nor prior thereto. (N.T. 1/5/95 p. 35.) She did, however, have a learner's permit in 1986 and reapplied for it only after the accident. (N.T. 1/5/95 p. 36.) In 1986, she took driving

lessons and learned how to drive but not in the family car. (N.T. 1/5/95 pp. 68-69, 71.) Plaintiff's husband took her once to teach her how to drive but not in the car that was involved in the accident. (N.T. 1/5/95 p. 72.)

Plaintiff now owns a van but again did not participate in the purchase of it nor does she know how much her husband paid for it. (N.T. 1/5/95 p. 65.) Ms. Williams also claims that her name was placed on a title of a vehicle but she did not know this information at the time her husband arranged to have the vehicle titled in her name. According to Ms. Williams, her name was on the title because her husband had another car. (N.T. 1/5/95 p. 66.) Plaintiff asked her husband why her name was on the car because she did not own any vehicles and did not drive. (N.T. 1/5/95 p. 98.) Ms. Williams requested that her husband remove her name from the title because when she does get her license, she does not want "anything against [it]." (N.T. 1/5/95 p. 98.)

In terms of sufficiency of the evidence, in order for the jury in the present case to have determined that the plaintiff was an owner, they must have disbelieved the plaintiff. The jury is free to disbelieve plaintiff's testimony as the fact-finder is entitled to believe all, part, or none of the evidence. *Commonwealth v. Zelosko,* 454 Pa. Super. 635, 640, 686 A.2d 825, 827 (1996).

Moreover, a review of the additional testimony elicited from Ms. Williams indicates that the following facts would serve to discredit her testimony regarding ownership of the vehicle in question.

Ms. Williams is the principal wage earner in the family and files tax returns. Her husband, however, does not file tax returns, although he tries to work regularly. (N.T. 1/5/95 pp. 62, 105.) Despite this testimony, plaintiff did concede that her husband was not

"regularly employed" although she, in contrast, has worked consistently from the time she was a teenager. (N.T. 1/5/95 pp. 32-33.) The longest time of unemployment during her employment career (ages 16 to 55) was one year or so. (N.T. 1/5/95 p. 32.)

She did not maintain joint bank accounts with her husband but instead plaintiff had her own bank account. (N.T. 1/5/95 pp. 98-99.) Her husband did not have a bank account. (N.T. 1/5/95 p. 99.)

A doctor's note from Ms. Williams' doctor on March 4, 1991 uses the word "driving" in reference to Ms. Williams (N.T. 1/5/95 p. 79.) Ms. Williams testified that it was just a habit for her (Ms. Williams) to say driving instead of saying she was a passenger and reiterated that she did not drive. (N.T. 1/5/95 p. 79.) The note also indicated that the motion of plaintiff's neck, turning her head, makes her neck hurt. (N.T. 1/5/95 p. 80.) Ms. Williams did concede that perhaps a driver would have more occasion to turn his or her neck and look back and forth than a passenger would. (N.T. 1/5/95 p. 80.)

At her deposition, plaintiff was asked about prior back injuries and plaintiff stated she had none. (N.T. 1/5/95 p. 84.) However, plaintiff testified at trial that although she did not forget that she had back problems before the accident, at the deposition her mind was primarily on the car accident and she "wasn't contributing to anything that happened on the job or anything like that" so she misunderstood. (N.T. 1/5/95 p. 84.) Plaintiff further testified that she did not know if she told her doctors about any prior back or neck problems, although they could have asked her about them. (N.T. 1/5/95 p. 85.) Doctor Gandy testified from various notes regarding Ms. Williams' prior injuries, including neck and shoulder achiness, tingling in hands and acute back strain. (N.T. 1/4/95 pp. 184-88.)

Moreover, plaintiff testified at her deposition that since the accident she did not have any other accidents involving her back, hands or wrists. (N.T. 1/5/95 p. 86.) Despite the fact that her own doctor testified at trial that she reported to him that she was accidentally hit in the back in November of 1991 which made things worse, plaintiff has no recollection of such an incident. (N.T. 1/4/95 pp. 198-99; 1/5/95 pp. 86-87, 88.) Plaintiff did acknowledge that it was possible that the incident happened but that she had forgotten about it. (N.T. 1/5/95 p. 87.)

Clearly, there was ample evidence for this jury to disbelieve Ms. Williams. It does not shock the conscience of this court that the jury did not believe that Mr. Williams purchased the more expensive household items, including cars, television sets and furniture, without consulting Ms. Williams, without having a bank account and without being gainfully employed. Furthermore, given her inconsistencies between her trial testimony and deposition testimony and a doctor's notation which indicates that Ms. Williams did drive, there was sufficient evidence to support a finding that Ms. Williams could be considered an owner of the car.

Finally, a review of the recent Commonwealth Court case of *Hames v. Philadelphia Housing Authority,* 696 A.2d 880 (Pa. Commw. 1997), indicates that the issue of ownership would not have been relevant to this case because plaintiff would have been deemed to have selected the limited tort option.

In *Hames,* plaintiff-daughters were riding in a car driven by their father and owned by their mother. The car was uninsured. Plaintiffs argued that they were not subject to limited tort damages pursuant to 75 Pa.C.S. §§1705(a)(5) and 1705(b)(3), due to the fact that they were neither owners of their mother's vehicle nor named insureds under any applicable automobile insurance policy. The court held that because the mother was un-

insured, she was deemed by operation of law to have selected the limited tort option, and because section 1705(b)(2) of the PaMVFRL provides that the tort option selected by the named insured shall apply to all insured under the policy, the children were bound by the limited tort option.

Section 1705(b)(2) states that "[t]he tort option selected by a named insured shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy." *Id.* at 883 n.6. Given this determination, it would appear that the court reviewed the definition of "insured" under the PaMVFRL: "any individual residing in the household of the named insured who is: (1) a spouse of other relative of the named insured; or (2) a minor in the custody of either the named insured or relative of the named insured." 75 Pa.C.S. §1705(f). Because the children were presumably minors in the custody of their mother, they were "insureds" and are deemed to have accepted the limited tort option which was selected, by operation of law, by their mother, pursuant to section 1705(b)(2).

The reasoning for this determination was as follows:

"To decide otherwise and to accept appellants' argument would afford greater rights to minor children whose parents have no insurance than to minor children whose parents have purchased insurance and chosen the limited tort option. It is a well-settled principle of statutory construction that the legislature does not intend a result that is absurd or unreasonable. . . . As indicated by section 1705(b)(2) of the MVFRL, the legislature intended that minor children residing in their parents' household be subject to the same tort option as their parents." *Id.* at 883.

Utilizing this analysis in the present case, plaintiff is also deemed to have selected the limited tort option. Her husband was a titled owner of a vehicle but had

no insurance. Therefore, pursuant to 75 Pa.C.S. §1705(a)(5), Mr. Williams is deemed to have chosen the limited tort alternative. As a result, pursuant to 75 Pa.C.S. section 1705(f), Ms. Williams is an insured and "[t]he tort option selected by a named insured shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy." 75 Pa.C.S §1705(b)(2). The jury then found that plaintiff suffered no serious bodily injury. (N.T. 1/5/95 p. 240.) Therefore, there was no error in the jury's verdict. In addition, the reasoning of *Hames* is applicable to the present case.

For all of the foregoing reasons, the issue regarding the burden of proof has been waived, the court did not err in denying the motion for directed verdict and the verdict was not against the weight of the evidence.