673 A.2d 340

## MIDLAKE ON BIG BOULDER LAKE, CONDOMINIUM ASSOCIATION, Appellant,

v.

### Ronald J. CAPPUCCIO and Sondra Lippi–Cappuccio.

Superior Court of Pennsylvania.

Argued Dec. 13, 1995.

Filed March 11, 1996.

James R. Nanovic, Jim Thorpe, for appellant.

Ronald J. Cappuccio, pro se.

G. Adam Silverstein, Philadelphia, amicus curiae.

Before CIRILLO, HOFFMAN and OLSZEWSKI, JJ.

CIRILLO, Judge.

Plaintiff/appellant Midlake on Big Boulder Lake, Condominium Association (Midlake) appeals from the order[1] enjoining and prohibiting Midlake from enforcing a section of the association's Declaration, which prohibits owner/members from posting signs on their respective properties. We reverse.

Midlake is a condominium association located in Kidder Township, Carbon County, Pennsylvania with the condominium units located along Big Boulder Lake. The association

---

1. Initially, we note that no post-trial motions were filed prior to this appeal, which would normally constitute a waiver for failure to preserve the issues for appellate review. The procedural history of this case, however, is nearly an exact replication of the circumstances addressed in *Winkelman v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 418 Pa.Super. 439, 614 A.2d 717 (1992). In *Winkelman,* as here, plaintiff initiated an action in equity, and the trial court entered an order and opinion, instead of the adjudication and decree *nisi* required by Pa.R.C.P., Rule 1517(a), 42 Pa.C.S.A. In keeping with our previous rulings on this issue, we determined that failure to file post-trial motions does not prevent us from reaching the merits of the claims. *Winkelman,* supra at 442–43, 614 A.2d at 719; *see also Daley–Sand v. West American Insurance Co.,* 387 Pa.Super. 630, 636, 564 A.2d 965, 968 (1989).

was established, under Pennsylvania's Uniform Condominium Act,[2] by the community developer, Northeast Land Company. A Declaration was filed with the Carbon County Recorder and Deeds Office at the time of the formation of Midlake.

Ronald and Sondra Cappuccio (the Cappuccios) acquired a unit by deed in January 1989, which was duly recorded. The declaration was incorporated in the deed. By October, 1989, the property values in the area had plummeted, and the Cappuccios placed two computer-generated signs in the windows of their condominium which read: "For Sale by Owner. Call xxx-xxx-xxxx." The posting of these signs was in violation of Section 7.1.5 of the Declaration, which states:

No unit owner (except declarant in connection with its leasing and marketing and sale of units) may erect any sign on or in a unit or in a common element or limited common element which is visible from the outdoors without, in each instance, having obtained the prior written permission of the Executive Board.

Midlake contacted the Cappuccios to enforce the Declaration. When the Cappuccios refused to comply, Midlake brought an action in equity to compel the Cappuccios to take down the signs. The signs were removed, however, around March 1993, when the Cappuccios leased their unit. Midlake offered to withdraw its complaint if the Cappuccios would sign a stipulation stating that they would refrain from posting signs in the future. The Cappuccios refused.

A non-jury trial was held before the Honorable John P. Lavelle. The trial court noted that the matter was undeniably moot, but decided the matter after determining that the freedom of speech issue affected the interest of all the owners

2. 68 P.S. § 3101. The Act provides that a declaration for a condominium must contain any restrictions created by the declarant on use, occupancy, and alienation of the unit. Midlake has complied with the law, and it is not disputed that the Cappuccios were aware of the restriction at the time of purchase. Mr. Cappuccio is an attorney, licensed to practice in New Jersey.

at Midlake, and could otherwise repeatedly escape review.[3] The trial court then dismissed Midlake's complaint, and granted the Cappuccios' counterclaim, prohibiting Midlake from enforcing Section 7.1.5 of the declaration. In its opinion, the trial court reasoned that despite the fact that "[i]t is beyond cavil that the first section of the Fourteenth Amendment applies only to the states, and erects no shield against purely private conduct, however discriminatory or wrongful," to enforce the restrictive covenant would be "state action" under *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). We find that the application of *Shelley* by the trial court in this case was an error of law.

On appeal, Midlake raises the following questions:[4]

1. Is a condominium restriction against the placements of signs visible from the outdoors without prior approval of the board of directors an impermissible infringement against free speech and a violation of the United States Constitution?

2. Should *Shelley v. Kraemer* be extended so that judicial enforcement of a condominium restriction constitutes state action subject to constitutional scrutiny?

■ Initially, we note that the Cappuccios admit that "if the Plaintiff, *instead of being a private organization* established under the laws of the Commonwealth of Pennsylvania, were instead a municipal governmental organization, the restrictions would clearly be unconstitutional." Midlake, however, is a private organization, and as such, cannot abridge the rights of the First Amendment of the Constitution. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Accordingly, the condominium restriction against placing signs in the unit without prior approval by the board

3. Pennsylvania case law, specifically *Reichley v. North Penn School District*, 113 Pa.Commw. 528, 537 A.2d 391 (1988), cited by the trial court, allows courts to decide an important controversy which might otherwise elude judicial scrutiny due to the legal maneuvering of a litigant.

4. Community Associations Institute, Inc. filed a brief and presented oral argument as amicus curiae on behalf of Midlake.

of directors is not an impermissible infringement of free speech in violation of the United States Constitution.

■ Next, the "state action" test, as directed by our supreme court, "is applied by the courts in determining whether, in a given case, a state's involvement in private activity is sufficient to justify the application of a federal constitutional prohibition of state action to that conduct." *Hartford Accident & Indemnity Co. v. Insurance Commissioner of Commonwealth,* 505 Pa. 571, 586, 482 A.2d 542, 549 (1984). This court subsequently determined, after a thorough review of the relevant federal law, that *Shelley v. Kraemer, supra,* is **not applicable to the enforcement of a restrictive covenant in a contract between private parties,** by stating:

> [W]here a state court enforces the right of private persons to take actions which are permitted but not compelled by law, there is no state action for constitutional purposes in the absence of a finding that racial discrimination is involved as existed in the *Shelley* case, *supra.*

*Wilco Electronic Systems, Inc. v. Davis,* 375 Pa.Super. 109, 114, 543 A.2d 1202, 1205 (1988) (citations omitted).

■ The Cappuccios alternatively argue that since Midlake was organized under the laws of the Commonwealth, the establishment of the organization was therefore state action. This argument is meritless, and we summarily reject it. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974) ("The mere fact that a business is subject to state regulation does not itself convert its action into that of the state"); *see also Murphy v. Harleysville Mutual Insurance Co.,* 282 Pa.Super. 244, 422 A.2d 1097 (1980), cert. denied 454 U.S. 896, 102 S.Ct. 395, 70 L.Ed.2d 211 (1981).

■ The Cappuccios also weakly assert that Midlake is comparable to a company town, such as that described in *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), since it has many of the same types of facilities. Despite the trial court's statement regarding a "mini municipality," there is no correlation between Midlake and a company town or municipality. Midlake's facilities are entirely

privately run. While there is sewer service, private streets, and private maintenance, Midlake provides no facilities for community public use that are typically found in a municipality, such as schools, libraries, and other public functions. We need not discuss this issue further.

In conclusion, Midlake is a private organization and there is no racial discrimination or bias, such as that exhibited by *Shelley*, pertinent to the restrictive covenant, which the parties entered into without any compulsion of law. There is, therefore, no state action in the court's judicial enforcement of the condominium association's Declaration. *Wilco, supra.*

The courts of this Commonwealth have vigorously defended the rights which are guaranteed to our citizens by both the federal and our Commonwealth's constitutions. One of the fundamental precepts which we recognize, however, is the individual's freedom to contractually restrict, or even give up, those rights. The Cappuccios contractually agreed to abide by the provisions in the Declaration at the time of purchase, thereby relinquishing their freedom of speech concerns regarding placing signs on this property. Accordingly, we reverse.

Order reversed.