**CHRISTOPHER M'S HAND POURED FUDGE, INC.**

**v.**

**Clyde L. HENNON, an individual and The Fudge Works, Inc., a corporation, Appellants.**

Superior Court of Pennsylvania.

Argued June 10, 1997.

Filed Aug. 25, 1997.

William R. Bishop, Jr., Pittsburgh, for appellants.

Stephen J. Laidhold, Thomas M. Ferguson, Pittsburgh, for appellee.

Before CIRILLO, JOHNSON and FORD ELLIOTT, JJ.

JOHNSON, Judge.

In this appeal, we must decide whether a trade secret injunction that permanently enjoins the defendants from engaging in the manufacture of a product is too broad. We hold that such an injunction is a proper means to protect trade secrets where the defendants' manufacture of that product is inextricably connected to their knowledge of the plaintiff's trade secrets. Accordingly, we affirm the order granting the injunction.

Christopher M. Warman is the founder and president of Christopher M's Hand Poured Fudge, Inc. ("Christopher M's"), which manufactures and sells gourmet fudge. The fudge is made from a secret recipe that

Warman purchased for $140,000 and which he has subsequently refined.

Warman hired Clyde L. Hennon to work as his assistant in the daily operations of Christopher M's. Hennon had no prior experience in the fudge-making business. In the course of his employment, Hennon learned the details of Christopher M's fudge recipe and also gained knowledge of the unique manufacturing process employed by Christopher M's; Warman had kept this information secret from most of his employees. During negotiations between Christopher M's and the Hershey Foods Corporation ("Hershey"), regarding an agreement by which Christopher M's would manufacture fudge for Hershey, Warman assigned Hennon the sensitive task of preparing documents that listed the ingredients of Christopher M's fudge. Hennon also had access to Christopher M's customer lists, business plans, and other confidential business and financial information.

Hennon left Christopher M's after approximately one year of employment; the parties dispute whether he left voluntarily or was fired. On the day that his employment ended, Hennon took from Christopher M's certain documents and computer discs containing confidential business information. Specifically, Hennon misappropriated the following information: customer lists; vendor lists; quality assurance information; general management practices, hazard analyses and critical control points; product cost analysis; market analysis; financial reports and projections; expansion plans; business plans; documents relating to negotiations with Hershey; and other miscellaneous documents. Joint Stipulation of Facts ¶ 21.

After leaving Christopher M's, Hennon launched his own fudge-making business, The Fudge Works, Inc. ("The Fudge Works"). Christopher M's subsequently sued Hennon and The Fudge Works, alleging that Hennon was improperly utilizing Christopher M's secret fudge recipe and other trade secrets in the operation of The Fudge Works. Christopher M's then filed a petition for a preliminary injunction in which it sought to enjoin Hennon and The Fudge Works from, inter alia, utilizing its trade secrets in the manufacture of fudge and from engaging in the manufacture or sale of fudge. The parties agreed, by stipulation, to treat the injunction proceedings as a hearing for a permanent injunction. Docket Entry No. 15. After the hearing, the court granted the injunction. Hennon and The Fudge Works now appeal.

 Initially, we note that Hennon and The Fudge Works failed to file post trial motions. Normally, the failure to file post trial motions results in the waiver of all issues for appellate review. *Midlake on Big Boulder Lake Condominium Ass'n v. Cappuccio*, 449 Pa.Super. 124, 126 n. 1, 673 A.2d 340 n. 1, *appeal denied*, 544 Pa. 684, 679 A.2d 230 (1996). In an equity action, however, when the trial court enters an opinion and order, instead of findings of fact and a decree nisi, as required by Pennsylvania Rule of Civil Procedure 1517(a), this Court will excuse the failure to file post trial motions. *Id.* at 126 n. 1, 673 A.2d at 340–41 n. 1; *Winkelman v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 418 Pa.Super. 439, 442–43, 614 A.2d 717, 718–19 (1992). In this equity action, the trial court filed an opinion and order, rather than findings of fact and a decree nisi. Docket Entries No. 18 and 19, Opinion filed April 1, 1996 and Order dated March 29, 1996. Accordingly, we will excuse the defendants' failure to file post trial motions and proceed to the merits of this appeal. *Cappuccio, supra; Winkelman, supra.*

Hennon and The Fudge Works present three questions for our review: (1) whether the lower court erred by concluding that Christopher M's fudge recipe is a trade secret; (2) whether the court erred by enjoining their use of Christopher M's trade secrets in the absence of a restrictive covenant; and (3) whether the court issued an overly broad injunction. We will reverse an order granting injunctive relief only if we conclude that the trial court committed an abuse of discretion or error of law. *Den–Tal–Ez, Inc. v. Siemens Capital Corp.*, 389 Pa.Super. 219, 227, 566 A.2d 1214, 1217 (1989) (en banc).

 The defendants first argue that Christopher M's fudge recipe is not a trade secret. The Pennsylvania Supreme Court has adopted the definition of "trade secret" that is set forth in comment b to section 757 of the *Restatement of Torts:*

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and gives him an opportunity to obtain an advantage over competitors who do not know or use it."

*Felmlee v. Lockett,* 466 Pa. 1, 9, 351 A.2d 273, 277 (1976), quoting *Restatement of Torts* § 757 cmt. b; *Van Products Co. v. General Welding and Fabricating Co.,* 419 Pa. 248, 258–59, 213 A.2d 769, 775 (1965). Some factors that a court may consider in determining whether information qualifies as a trade secret include:

(1) the extent to which the information is known outside the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Tyson Metal Products, Inc. v. McCann,* 376 Pa.Super. 461, 465, 546 A.2d 119, 121 (1988), quoting *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1266 (3d Cir.1985). A trade secret, however, does not include a worker's "aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment...." *Pittsburgh Cut Wire Co. v. Sufrin,* 350 Pa. 31, 35, 38 A.2d 33, 34 (1944). The plaintiff bears the burden of establishing the existence of a trade secret. *Gilbert v. Otterson,* 379 Pa.Super. 481, 490, 550 A.2d 550, 555 (1988).

■ At the hearing, Warman testified that he derived Christopher M's recipe after several years of trial and error from a recipe that he had purchased for $140,000 from a New England candy maker. N.T., February 27 and March 6, 1996, at 20. Warman stated that certain aspects of Christopher M's recipe were unique and not utilized by other fudge manufacturers; these aspects included the use of a wet fondant, the use of 18% fat ultra high temperature table cream and the use of Callebaut brand unsweetened chocolate. *Id.* at 21–23. Further, Warman testi-

fied that he took great care to keep the recipe secret. The precautions that he followed included: keeping only one written copy of the recipe and storing it off the premises of his business, *id.* at 18–19; compartmentalizing the manufacturing process, so that most employees would know only the portion of the recipe relating to their specific manufacturing tasks, *id.* at 19; and revealing the entire recipe to very few key employees. *Id.* at 19, 92. Finally, Warman testified that the recipe had a multimillion dollar value. *Id.* at 19–20.

We conclude that Warman's testimony is sufficient to establish that the recipe is a trade secret. Before Hennon left the company, the recipe was not known outside of Christopher M's; Warman expended a large sum of money and a great deal of effort in developing the recipe; Warman took steps to keep the recipe a secret within the company; and Warman testified that the recipe was valuable. This evidence is sufficient to establish that the recipe is a trade secret. *See Felmlee, supra.*

In addition to barring the defendants' use of the fudge recipe, the lower court enjoined Hennon and The Fudge Works from using Christopher M's "customer lists, customer files, manufacturing standards and processes, market trends, business plans, computer dis[c]s and all other documents or property of [Christopher M's]." Order, dated March 29, 1996. In the statement of questions involved section of the defendants' brief, the trade secret status of those other items is not challenged; the defendants do, however, discuss some of those items in the argument section of their brief.

■ Pennsylvania Rule of Appellate Procedure 2116 provides that "ordinarily, no point will be considered which is not set forth in the statement of questions involved or suggested thereby." Pa.R.A.P. 2116(a). Thus, "[q]uestions not presented are deemed waived." *Harkins v. Calumet Realty Co.,* 418 Pa.Super. 405, 412, 614 A.2d 699, 703 (1992). In this case, the defendants presented the question of whether the lower court erred by "finding that the recipe purchased by Christopher Warman consisting of a list of ingredients given to the Defendant, Clyde

Hennon, in his capacity as a packager and data processor, and accessible on the company's computer system, was a trade secret entrusted in the confidence of the Defendant, Clyde Hennon." Brief of Appellant at 3. Nothing in that statement suggests a challenge to the trade secret status of the other items enumerated in the injunction. Accordingly, we conclude that any argument relating to the trade secret status of any item other than Christopher M's fudge recipe has been waived. Pa.R.A.P. 2116(a); *Harkins, supra,* at 412, 614 A.2d at 703.

The defendants next argue that the trial court erred by issuing the injunction in the absence of a covenant restricting Hennon's use of Christopher M's trade secrets or restricting his right to compete. Under Pennsylvania law, an employee's duty not to use or disclose his employer's trade secrets may arise from a restrictive covenant or may be implied from a confidential employment relationship. *Air Products and Chemicals v. Johnson,* 296 Pa.Super. 405, 415–16, 442 A.2d 1114, 1120 (1982); *accord Macbeth–Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 85, 86 A. 688, 691 (1913). Further, an employee cannot use or disclose trade secrets that he misappropriates from his employer. *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542, 553, 151 A. 15, 19 (1930) ("[O]ne who has obtained knowledge of a secret process of manufacture through fraud or bad faith will ·be restrained from using it."). Thus, when an employee learns an employer's trade secrets in the course of a confidential employment relationship, a court may enjoin the employee's use or disclosure of those secrets, regardless of whether the employee entered into a covenant restricting his use of such information.

In this case, Christopher M's and Hennon did not execute an agreement restricting Hennon's use of Christopher M's trade secrets. Trial Court Opinion, *supra,* at 9.· We therefore must determine whether Hennon's employment relationship with Christopher M's was confidential and thus imposed upon Hennon a duty not to use or disclose Christopher M's trade secrets.

Hennon worked for one year as an assistant to Warman, aiding in the day-to-day operations of the business. Joint Stipu-

lation of Facts ¶ 17. Warman testified that he had hired Hennon to serve as his "right-hand man." N.T., *supra,* at 44. In the course of his duties, Hennon was one of the few employees to have access to Christopher M's fudge recipe and to learn all the steps of the manufacturing process. *Id.* at 38–40, 46–47. Further, during Christopher M's negotiations with Hershey, Warman assigned Hennon the sensitive task of typing certain secret information into Christopher M's computer system; this information included a detailed list of the key ingredients of Christopher M's fudge. Joint Stipulation of Facts ¶ 18. When Hennon's employment ended, he stole numerous computer files and other documents that contained confidential information. *Id.* ¶ 21. Based on his access to this secret information during the course of his employment, we conclude that Hennon's employment relationship with Christopher M's was confidential and that Hennon thus had a duty not to use or disclose Christopher M's trade secrets. *Felmlee, supra; Wexler v. Greenberg,* 399 Pa. 569, 577–78, 160 A.2d 430, 434 (1960) ("[T]he trust and confidence upon which legal relief is predicated stems from the instance of the employer's turning over to the employee the pre-existing trade secret.") (emphasis deleted).

Hennon and The Fudge Works also argue that, even if the court properly concluded that Hennon had a duty not to use or disclose Christopher M's trade secrets, Christopher M's failed to prove the existence of ten factors necessary to establish a right to injunctive relief. The defendants, however, did not raise this argument in their statement of questions involved, as required by Pennsylvania Rule of Appellate Procedure 2116(a). "Questions not presented are deemed waived." *Harkins, supra,* at 412, 614 A.2d at 703. Accordingly, we conclude that this argument, appearing on pages 25 through 28 of the defendant's brief, has been waived. Pa. R.A.P. 2116(a); *Harkins, supra,* at 412, 614 A.2d at 703.

Finally, the defendants argue that even if Hennon did acquire knowledge of Christopher M's trade secrets in the course of a confidential employment relationship, the injunction issued by the lower court, which

enjoined him from working for The Fudge Works or from otherwise manufacturing, selling or distributing fudge, is too broad. The defendants ask this Court to modify the injunction so that they are barred from using "Christopher M's recipe for a stated amount of time and in a stated market area." Brief of Appellant at 31.

■■■■ Generally, courts can issue two types of injunctions to protect trade secrets. A "use injunction" bars a defendant from using a misappropriated trade secret in the manufacture of a product, but does not otherwise interfere with the defendant's business. Roger M. Milgrim, 4 *Milgrim on Trade Secrets*, § 15.02[1][l]; *General Electric Co. v. Sung*, 843 F.Supp. 776, 779 (D.Mass.1994). A "production injunction", on the other hand, completely bars the defendant from manufacturing the type of product in which the trade secret is utilized. Milgrim, *supra*, § 15.02[1][l]; *Sung*, 843 F.Supp. at 779. Courts will generally impose the broader production injunction when a trade secret is "inextricably connected" to the defendant's manufacture of the product, because the defendant "cannot be relied upon to 'unlearn' or abandon the misappropriated technology." *Sung*, 843 F.Supp. at 780; *accord* Milgrim, *supra*, § 15.02[1][l].

In this case, the lower court imposed a production injunction that barred Hennon and The Fudge Works from manufacturing or selling fudge. Order, dated March 29, 1996. Our research has not discovered any reported cases in which a Pennsylvania appellate court has considered whether an injunction that permanently barred a defendant from engaging in a particular business was too broad. Our research of the law in other jurisdictions, however, indicates that such injunctions are not unprecedented. In *Monovis, Inc. v. Aquino*, 905 F.Supp. 1205 (W.D.N.Y.1994), the United States District Court for the Western District of New York permanently enjoined the defendant in a trade secret case from competing in the market for single-screw compressors. *Id.* at 1234. In support of its injunction, the court noted that it was "doubtful whether [the defendant] could completely divorce his knowledge of the trade secrets from any single-screw compressor work in which he might engage." *Id.* The court thus based its

injunction, in part, on the conclusion that a perpetual production injunction was the most effective means to prevent a former employer's trade secrets from infiltrating the future work of its former employee. *See id.*, citing *FMC Corp. v. Varco Intern., Inc.*, 677 F.2d 500 (5th Cir.1982); *cf. Air Products, supra*, at 425, 442 A.2d at 1125 (affirming preliminary injunction that barred defendant from performing particular task with new employer on the basis that he would have difficulty performing that task to the best of his ability without relying on trade secrets learned from his previous employer).

■■■■ Furthermore, although no Pennsylvania appellate court decisions address the question of whether an injunction such as the one in this case is too broad, nothing in our precedents indicates that such injunctions are invalid per se. Rather, the determination regarding the proper scope of an injunction is committed to the discretion of the trial court. *Siemens, supra*, at 256, 566 A.2d at 1232. Pennsylvania law permits courts the leeway to issue trade secret injunctions that are " 'broad enough to ensure that the information is protected.' " *Id.*, quoting *SI Handling Systems*, 753 F.2d at 1265.

■■■ In this case, Hennon acquired Christopher M's fudge recipe and ingredients list, and also learned the unique steps of its fudge manufacturing process during the course of his employment. Warman testified that with this information, Hennon could replicate Christopher M's fudge. N.T., *supra*, at 48–49. Prior to working for Christopher M's, Hennon had no fudge-making experience. *Id.* at 264, 566 A.2d 1214. The trial court concluded that Hennon utilized Christopher M's trade secrets in making fudge. Trial Court Opinion, *supra*, at 5.

Based upon this evidence, we conclude that the trial court did not err by permanently enjoining Hennon and The Fudge Works from engaging in the manufacture or sale of fudge. Hennon's lack of prior fudge-making experience, combined with his knowledge of Christopher M's secret recipe and manufacturing process, tends to establish an inextricable connection between Christopher M's trade secrets and the manufacture of fudge by Hennon and The Fudge Works. *See*

*Sung,* 843 F.Supp. at 780 ("[W]hether the defendant had a significant and comparable, pre-existing design of its own prior to the misappropriation of the trade secrets" bears upon whether there is an inextricable connection). Furthermore, an injunction that bars Hennon and The Fudge Works from involvement in the fudge-making business provides absolute protection to Christopher M's trade secrets by guaranteeing that Hennon will not use those trade secrets to duplicate Christopher M's fudge. *Cf. Siemens, supra,* at 257, 566 A.2d at 1232–33 (upholding injunction that banned defendant corporation from acquiring plaintiff's competitor corporation for a period of three years, after defendant learned certain of plaintiff's trade secrets during merger and acquisition negotiations). We therefore hold that the lower court did not abuse its discretion by permanently enjoining Hennon and The Fudge Works from engaging in the manufacture and sale of fudge.

Order **AFFIRMED.**