IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Ann Trethewey, : 
              Appellant : 
 : 
          v. :     No. 138 C.D. 2024
 :     Argued: December 9, 2024
Downingtown Area School : 
District : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT          FILED: February 25, 2025

       Ann Trethewey (Requester) appeals an order of the Chester County Court of Common Pleas (trial court), which affirmed the final determination of the Office of Open Records (OOR) that the records sought from the Downingtown Area School District (School District) were exempt from disclosure under the Right-to-Know Law (RTKL).[1] The OOR determined that the Diversity, Equity, and Inclusion (DEI) training materials sought by Requester were exempt as trade secret and confidential proprietary information. On appeal, Requester argues that the trial court erred because the records in question are routinely shared with School District employees. As such, they are not trade secret, confidential, or proprietary information. For the reasons to follow, we reverse, in part, and vacate, in part, the trial court's order and remand for further proceedings.

## Background

       On January 3, 2023, Requester submitted a RTKL request to the School District for the following records:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

1. Copy of all documents and materials (paper or electronic) and all presentations used by the [DEI] program director and DEI staff that were used to instruct or lead any training or programs to any staff, teacher, counselor or student in the [] School District.

2. Copy of any Copyright information on materials used (paper or electronic).

[3.] Copy of all documents and materials (paper or electronic) and all presentations that were used to instruct or lead any cultural awareness, courageous conversations, unconscious bias and cultural proficiency training or programs to any staff, teacher, counselor or student in the [] School District. Note: As per District Policy 801 (Public Records), a fee may be charged to the individual requesting a copy of District public records.

Reproduced Record at 1 (R.R. __).[2]

On January 5, 2023, the School District denied the request, stating:

1. Your request is denied. Section 708(b)(11) of the RTKL[3] exempts from disclosure "[a] record that constitutes or reveals a trade secret of [sic] confidential proprietary information." Confidential proprietary information is defined as "[c]ommercial or financial information received by an agency: (1) which is privileged or confidential; (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." See also *In The Matter of Theresa Darr, Requester v. Pennsylvania Higher Education Assistance Agency, Respondent*, Docket *No: AP 2019-1494*. The information requested in this paragraph is a trade secret and would cause substantial harm to the competitive position of the person that created and submitted this information. See additional attachments.

---

[2] Pennsylvania Rule of Appellate Procedure 2173 requires that the reproduced record be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it only utilizes Arabic figures. For convenience, we cite to each page as paginated by Requester.

[3] 65 P.S. §67.708(b)(11).

R.R. 2.  The response included a certification from the School District's DEI

Director, Justin Brown (Brown), which stated, in pertinent part, as follows:

> 2.    I created the materials requested above, prior to my employment by the [School District] and prior to my appointment as [DEI Director] – *they were not created using the resources of the [School District], are protected by copyright and are my personal proprietary training materials*.
>
> 3.    These materials are not made available to the public, or other organization (as that would substantially interfere with the confidential commercial nature of them)[,] and I ensure the confidentiality of these materials using the following best practices and safeguards:
>
>> a.    The materials are password protected and the credentials are maintained in confidence;
>>
>> b.    No person outside of the [School District] is provided with or permitted to observe these materials;
>>
>> c.    The training that was conducted was undertaken solely within the [School District] and limited to employees thereof – it is not shared with any third parties outside of [the School District], such as external vendors, regulators, other [school districts], the public or any other outside entity[;]
>>
>> d. The [School District] employees are notified that the training is confidential and that to the extent the training is interactive, the [School District] employees are assured that their participation will not be released or otherwise disclosed;
>>
>> e.    [*School District*] *employees understood that their answers were to be kept confidential from the public; and were only disclosed to select* [*School District*] *employees to the extent necessary to evaluate the training*[; and]
>>
>> f.    Disclosing the training materials would put me and the [School District] at a marketing disadvantage in relation to other school districts or other educational services as the training sought to be disclosed is unique, not available to the public or competing education

serviced [sic] and there is no other similar [sic] from any other districts such as this one.

R.R. 4-5 (emphasis added).

On January 26, 2023, Requester appealed to the OOR. The OOR invited the parties to supplement the record. The School District submitted a position statement, reiterating its reasons for denial, along with a supplemental attestation from Brown. Therein, Brown stated, in relevant part, as follows:

3.    I have been conducting trainings since 2008. I have held my Copyright since 2010 (almost 11 years prior to working with the [School] District), and established a [limited liability company] on April 1, 2019. I have a Masters in Student Affairs and am nationally trained by Greendot, NCBI, NCORE, Office of Civil Rights and the Center for Conflict Resolution.

. . . .

5.    *I use these materials outside the classroom as Creator and President of D.A.P. (Diversityawarenessprogram.com) which conducts team building workshops and open discussion sessions dealing with diversity and cultural awareness*.

6.    I plan, direct, coordinate, [and] assist as the internal consultant to the major businesses, superintendents, principals[,] and executive leadership team[s] regarding diversity, equity, and inclusion matters.

7.    I own and operate a company which has an online portal for certification and training and created and assisted with 10+ "Diversity Audits" for institutions of higher learning.

8.    I am President and [Chief Executive Officer] of Onward and Upward, that provides prospective college students with the skills and knowledge to be successful in institutions of higher learning. I have held my Copyright since 2017 (almost 4 years prior to working with the [School] District). The website: https://onwardupward6.wixsite.com/program.

9.    My materials are not distributed as part of the training program. If they were other trainers can steal that material and claim it as their own and will not use my training portal.

4

10. [] [The training materials] are of value to me because outside entities decide who they will pull in to do training. If the materials were made [sic] to the public, it would significantly impact my business and future endeavors.

R.R. 7-8 (emphasis added).

The OOR denied Requester's appeal. It found that the affidavits established that the requested records constituted trade secret and confidential proprietary information exempted from disclosure. It reasoned as follows. If the materials were made public, this would place Brown and the School District at a "market disadvantage" because this training program is unique. OOR Determination, 3/24/2023, at 6; R.R. 14 (quoting Brown Certification, ¶3(f)). Brown created the materials prior to becoming a School District employee, and their disclosure would allow a competitor to use them with other school districts. OOR Determination at 6-7; R.R. 14-15. Finally, although the training materials are shared with School District employees, Brown established safeguards to prevent their unintentional disclosure to persons outside the School District. Finally, the OOR had previously determined that the very materials sought by Requester were exempt from disclosure. *See Grady v. Downingtown Area School District*, OOR Dkt. No. AP 2022-2026, 2022 WL 17100457 (filed November 18, 2022) (School District properly withheld Brown's training materials as exempt as trade secret or confidential proprietary information).

Requester appealed the OOR's determination, and the trial court affirmed. It concluded that Brown's certification and supplemental attestation established that the training materials in the possession of the School District were confidential and had independent economic value to Brown. Their disclosure would harm Brown's competitive position in the education industry.

5

Nevertheless, the trial court agreed with Requester that the School District had not fully responded to her request. The trial court observed that Requester presented her request in three numbered paragraphs for three categories of records. However, the School District answered paragraph one and addressed only those materials created by Brown. The School District did not respond to paragraphs two and three of the request or search for records beyond those created by Brown. Accordingly, the trial court ordered the School District to conduct a good faith search for all records beyond those created by Brown.

Requester then appealed the trial court's order.

## Appeal

On appeal,[4] Requester argues that the trial court erred in holding that the DEI training materials fell within the RTKL's limited exemption for trade secret or confidential proprietary information. Because Brown shared these materials with School District employees in the scope of his employment, they are not secret, confidential, or proprietary. Further, the language in the affidavits was too general and conclusory to establish an exemption from the School District's duty to disclose the records in question.

## Applicable Law

The RTKL provides that "[u]nless otherwise provided by law, a public record . . . shall be accessible for inspection and duplication in accordance with [the RTKL]." Section 701(a) of the RTKL, 65 P.S. §67.701(a). The RTKL specifically protects "[a] record that constitutes or reveals a trade secret or confidential

---

[4] This Court's review of the trial court's decision determines "whether findings of fact are supported by [substantial] evidence or whether the trial court committed an error of law[] or an abuse of discretion in reaching its decision." *In re Right to Know Law Request Served on Venango County's Tourism Promotion Agency and Lead Economic Development Agency*, 83 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2014) (quotation omitted). Our review of legal issues is plenary. *Id.*

6

proprietary information" from disclosure. Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11). Section 102 of the RTKL defines "trade secret" as follows:

> Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:
>
> > (1) *derives economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons* who can obtain economic value from its disclosure or use; and
> >
> > (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
>
> The term includes data processing software obtained by an agency under a licensing agreement prohibiting disclosure.

65 P.S. §67.102 (emphasis added). Essentially, the RTKL employs the definition of "trade secret" found in the Uniform Trade Secrets Act, 12 Pa. C.S. §5302.[5]

Case law precedent under the RTKL has established the factors for determining a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *See West Chester University of Pennsylvania v. Schackner*, 124 A.3d 382, 392 n.15 (Pa. Cmwlth. 2015) (*Schackner*). A trade secret requires

---

[5] The Uniform Law Comment explains that the policy behind the Uniform Trade Secrets Act is "the maintenance of standards of commercial ethics." 12 Pa. C.S. §5302, Uniform Law Comment. It expanded upon the common law definition of trade secrets, explaining, for example, that "expensive research which proves that a certain process will *not* work could be of great value to a competitor." *Id*. (emphasis in original). Information found in trade journals, reference books, or published materials cannot constitute a trade secret.

"substantial secrecy and competitive value to the owner." *Id*. A trade secret determination is a fact-specific inquiry. *Mission Pennsylvania, LLC v. McKelvey*, 212 A.3d 119, 136 (Pa. Cmwlth. 2019), *aff'd in part and vacated in part*, 255 A.3d 385 (Pa. 2021).

The RTKL defines "confidential proprietary information" as "[c]ommercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." Section 102 of the RTKL, 65 P.S. §67.102. Critical to the confidential inquiry is what efforts have been made by the owner to keep the information confidential. *See Crouthamel v. Department of Transportation*, 207 A.3d 432, 441 (Pa. Cmwlth. 2019). To determine "substantial harm to the competitive position," the agency must show the existence of "(1) actual competition in the relevant market; and[] (2) a likelihood of substantial injury if the information [was] released." *Id*. "Competitive harm" focuses on harm caused by the use of "proprietary information by competitors." *Id*.

Exceptions to the disclosure of public records must be narrowly construed. *See Pennsylvania State Police v. Grove*, 161 A.3d 877, 893 (Pa. 2017). The party asserting the exemption bears the burden of proving that the record is exempt by a preponderance of the evidence. Section 708(a) of the RTKL, 65 P.S. §67.708(a).

The agency may present evidence on its claim for an exemption by affidavit or attestation. Absent evidence of bad faith, the veracity of the affidavits should not be questioned. *Office of Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013). However, "conclusory affidavits, standing alone," do not suffice. *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1130 (Pa.

Cmwlth. 2017). Stated otherwise, an affidavit that merely tracks the language of the statutory exemption will not establish that a requested record is exempt from disclosure. *Pennsylvania Department of Health v. Mahon*, 283 A.3d 929, 935 (Pa. Cmwlth. 2022).

With these principles in mind, we address Requester's appeal.

## I. Trade Secret

Requester argues that the School District did not meet its burden of establishing that the requested records meet the trade secret exemption. The DEI training materials were created by a School District employee, distributed to School District employees, "and blessed as an official training by [the School District]." Requester Brief at 13. Records related to an agency activity are public and must be disclosed, and there is no question that the DEI training materials were used in a School District activity. *Id*. at 11.

Further, Requester notes that, in the affidavits, Brown stated that the withheld records are "protected by copyright and, simultaneously, privileged and confidential trade secrets." *Id*. at 14. Requester argues that they cannot be both. Copyright laws do not preserve trade secrets. Rather, copyrighted materials cannot be used or duplicated without permission of the author; this is the limit of their protection.

Requester states that she seeks only records created, maintained, and transmitted in the course of Brown's work as a public official. She does not seek records created by Brown in his personal or commercial capacity and used outside his employment with the School District.

Finally, Requester argues that Brown's certification and supplemental attestation were inadequate to establish a trade secret exemption from disclosure. In any event, Brown's full-time employment with the School District belies the claim

9

he is engaged in a "trade" with respect to materials used only within the School District. Brown's affidavit stated that "no person outside [the School District] is provided with or permitted to observe these materials[.]" Requester Brief at 12 (quoting Brown Certification, ¶3(b); R.R. 4). Information shared with an untold number of School District employees cannot be secret and is not exempt from disclosure.

For its part, the School District does not address trade secrets in its brief, except in a passing way. The School District focuses on the confidential and proprietary nature of the requested materials. Brown's certification established that the training materials are not available to the public and that Brown took steps to limit their reproduction by School District employees. The School District emphasizes that the statements in Brown's certification and supplemental attestation were uncontradicted. In any case, the requested training materials already have previously been determined to be records that constitute trade secrets or confidential proprietary information. *See Grady*, OOR Dkt. No. AP 2022-2026, 2022 WL 17100457, at *4.

The RTKL protects trade secrets from disclosure by a government agency. It states:

> **(b) Exceptions.**--Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> . . . .
>
> > (11) A record that constitutes or reveals a trade secret or confidential proprietary information.

Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11). The terms "trade secret" and "confidential proprietary information" are separately defined and, thus, must be

10

separately analyzed. *Pennsylvania Public Utility Commission v. Friedman*, 293 A.3d 803, 826 (Pa. Cmwlth. 2023).

A trade secret may consist of a technical drawing, formula, pattern, device, or compilation of information that is used in an individual's business and that gives the individual an advantage over competitors who do not know it or use it. 12 Pa. C.S. §5302. A classic trade secret is the Coca Cola formula, which has been zealously protected for generations against its acquisition by any other soda manufacturer. Customer lists used to sell household articles door-to-door, a fudge recipe, and a company's pricing formulas can constitute trade secrets.[6] A trade secret does not include a worker's aptitude, skill, dexterity, manual and mental ability, and other knowledge the worker obtains in the course of his employment. *Christopher M's Hand Poured Fudge, Inc*., 699 A.2d at 1275.

A patent is not a trade secret. *Felmee*, 351 A.2d at 278 ("the very nature of the patent publication [has] been consistently held to work a destruction of any trade secret disclosed therein"); *see generally Mallet and Company Inc. v. Lacayo*, 16 F.4th 364, 383 (3d Cir. 2021) (information provided within or directly ascertainable from a patent cannot constitute a trade secret). The patent allows the owner to license its patented information for a fee. In time, however, the patent enters the public domain and can be used by anyone.

The same is true for copyrighted works. An applicant applying for a copyright is required to submit a copy of the material to the Copyright Office, which is available for public inspection in the Library of Congress. 17 U.S.C. §§407-408,

---

[6] *Felmee v. Lockett*, 351 A.2d 273 (Pa. 1976); *Crum v. Bridgestone/Firestone North American Tire, LLC*, 907 A.2d 578 (Pa. Super. 2006); *Christopher M's Hand Poured Fudge, Inc. v. Hennon*, 699 A.2d 1272 (Pa. Super. 1997); *Morgan's Home Equipment Corp. v. Martucci*, 136 A.2d 838 (Pa. 1957); *AmQuip Crane Rental, LLC v. Crane & Rig Services, LLC*, 199 A.3d 904 (Pa. Super. 2018); *Hyman Companies, Inc. v. Brozost*, 119 F. Supp. 2d 499 (E.D. Pa. 2000).

705. This is consistent with the fundamental purpose of the grant of the copyright which is "to promote the progress of science and useful arts." U.S. CONST. art. I, §8. It is not to reward the labor of authors. *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 349 (1991). "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id*. at 349-50.

To claim the trade secret exemption from disclosure under the RTKL, the record must be an actual secret of peculiar importance to the business. *Parsons v. Pennsylvania Higher Education Assistance Agency*, 910 A.2d 177, 185 (Pa. Cmwlth. 2006). The records must be genuine secrets, not tricks of the trade. *Macbeth-Evans Glass Co. v. Schnelbach*, 86 A. 688, 691 (Pa. 1913). Central to a trade secret is that its value is derived from its very secrecy. *Department of Public Welfare v. Eiseman*, 85 A.3d 1117, 1126 (Pa. Cmwlth. 2014).

Brown stated that the requested materials are his own; not made available to the public; and have been safeguarded to maintain their confidentiality. Brown Certification, ¶3(c); R.R. 6. He created the materials prior to his employment with the School District and uses them in his personal business, not just in his work for the School District. Brown Supplemental Attestation, ¶5; R.R. 7. Only School District employees see the materials and under his supervision.

In his supplemental attestation, Brown stated that he uses the "materials outside the classroom as Creator and President of D.A.P.," which offers team building and open discussion sessions relating to diversity and cultural awareness. Brown Supplemental Attestation, ¶5; R.R. 7. Again, these "materials are not distributed as part of the training program." Brown Supplemental Attestation, ¶9; R.R. 8. Should a competitor obtain them, his training portal would lose value. *Id*.

12

These affidavits may establish that the training materials have proprietary value to Brown; that DEI training is a competitive industry; and that the training materials are protected from duplication. However, these affidavits do not explain how these training materials derive their value "from not being generally known to, and not being generally ascertainable by proper means by other persons." *Department of Public Welfare v. Eiseman*, 125 A.3d 19, 23 (Pa. 2015) (quoting 12 Pa. C.S. §5302)*.* To the contrary, the training materials derive their value from being shared with School District employees and anyone who participates in D.A.P.'s training program.

This point is illustrated in *Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004). This case concerned a screenplay, which was found to have no economic value until "exploited publicly through broad dissemination." *Id*. at 305. As such, the screenplay was not a trade secret. Likewise, in *Mainardi v. Prudential Insurance Company of America*, No. 08-3605, 2009 WL 229757, at *1, *9 (E.D. Pa. January 30, 2009), the federal district court held that copyrighted audiovisual materials, sold to "independent insurance agents, financial and insurance marketing firms, financial planners[,] and major insurance companies" did not constitute trade secret information.[7] The economic benefit was derived from the sale of the product. By active marketing, the product became "readily ascertainable by proper means by[] other persons who [could] obtain economic value from [the] disclosure or use," and, thus, was not the type of information that is protected as a trade secret. *Id*. at *9. Similar to a poem, screenplay, or educational software, Brown's training

---

[7] The plaintiffs developed software to "educate and emotionally motivate customers via audiovisual vignettes designed to demonstrate how lack of planning could put the potential customers' business and personal finances at risk." *Mainardi*, 2009 WL 229757, at *1.

13

materials only have economic value when shared with other persons. As such, they do not constitute trade secret information.

Further, Brown's training materials are not in the nature of a "formula, drawing, pattern, [or] compilation including a customer list, program, device, method, technique or process." *See* 12 Pa. C.S. §5302. Brown's attestation and supplemental certification conflate the concepts of trade secret and product. A trade secret is essential to the product, but it is not the product itself. For example, Coca Cola uses a secret formula to create its product known as "Coke." Brown did not identify a "formula" or "algorithm" that was the secret to the creation of his product, which is DEI training material. Because that product is widely shared to School District employees, it is not secret.

In sum, the School District's certification and supplemental attestation did not establish that the information requested by Requester constituted trade secret information exempt from disclosure under Section 708(b)(11) of the RTKL. Accordingly, we reverse the trial court's decision that the training materials were exempt from disclosure as trade secret information.

## II. Confidential Proprietary Information

Next, Requester argues that the School District did not establish that the requested records constitute confidential proprietary information. There is no evidence that disclosure of these materials would cause Brown substantial competitive harm. Because Brown did not identify his competitors, this is fatal to his claim that the materials are proprietary. *See Pennsylvania Department of Revenue v. Flemming* (Pa. Cmwlth., No. 2318 C.D. 2014, filed August 21, 2015) (unreported). Brown's claim of harm in his supplemental attestation contradicts his statement in the certification that "the materials are not made available to the public or other organization." Requester Brief at 20 (quoting Brown Supplemental

14

Attestation, ¶3; R.R. 6). Requester directs this Court to its decision in *Giurintano v. Department of General Services*, 20 A.3d 613 (Pa. Cmwlth. 2011) (names of interpreters providing translation services are protected against disclosure as confidential proprietary information). In that case, the attestation included precise factual details, such as a description of the information claimed to be confidential and proprietary and the difficulty of its acquisition. Requester Brief at 22. By contrast, Brown's certification and attestation were conclusory.

The School District responds that it met its burden. Its certification and attestation established that there is competition in the field of DEI training and that disclosure of Brown's training materials will harm his ability to compete. They need to be kept confidential to protect against their use by other school districts and by other educational agencies.

The School District cites *In the Matter of Theresa Darr*, OOR Dkt. No. AP 2019-1494, 2019 WL 6050151 (filed November 7, 2019). In that case, the requester sought a copy of the Pennsylvania Higher Education Assistance Agency's (PHEAA) employee manual on debt collection procedures. PHEAA denied the request pursuant to Section 708(b)(11) of the RTKL, and the OOR affirmed. The manual was maintained strictly within PHEAA and available only to employees in the Loan Asset Maintenance division. Each page of the manual was marked "Proprietary & Confidential." Further, the attestation described the type of information contained in the manual, for which PHEAA expended significant effort and cost to develop. Disclosure would allow PHEAA's competitors in the federal student loan guaranty market to learn PHEAA's collection methodology. In fact, PHEAA was in the process of bidding on contracts with higher education loan authorities in Georgia and Missouri to handle their collection efforts.

15

Finally, the School District notes, again, that the records sought by Requester are the same records that the OOR has already held to constitute confidential proprietary information. *See Grady*, OOR Dkt. No. AP 2022-2026, 2022 WL 17100457.

Confidential proprietary information has a commercial or financial value; is privileged or confidential; and is key to the competitive position of the person that gave the information to the agency. Section 102 of the RTKL, 65 P.S. §67.102. Confidentiality requires an effort by the parties to "maintain their secrecy." *Eiseman*, 85 A.3d at 1128.

The burden is on the agency receiving the record request to establish an exemption under Section 708(b) of the RTKL. This Court has explained the burden as follows:

> Such a burden is especially problematic where Section 708(b)(11) of the RTKL is at issue because the sought after information likely relates to private entities, [which] may or may not be aware of the pending action in light of the fact that neither the requester, the agency, nor [the] OOR have a duty under the RTKL to provide notice to a third party whose interests may be implicated by a RTKL request. Releasing the potentially confidential information of a private entity based solely on an agency's failure to adequately defend a RTKL request could have serious due process implications. For this reason, [the] OOR should take all necessary precautions, such as conducting a hearing or performing in camera review, before providing access to information which is claimed to reveal "confidential proprietary information" under Section 708(b)(11) of the RTKL.

*Office of Governor v. Bari*, 20 A.3d 634, 648 (Pa. Cmwlth. 2011).

Examples of confidential proprietary information include a company's business methods; production quantities; and a list of interpreters able to provide

16

telephone translation services.[8]  Confidential proprietary information does not include the number of restaurant liquor licenses eligible for auction in each county or a pizza company's corporate newspaper.[9]

Brown attested to his considerable experience that he used to develop his training sessions on diversity and cultural awareness.  Brown has held a copyright since 2010 for a 54-page text on "D.A.P.," or "Diversity Awareness Program."[10] Brown Supplemental Attestation, ¶¶3, 5; R.R. 7.  Brown attested to the competitiveness of the educational programs industry and stated he has developed a training program unlike those used by other school districts.

However, by obtaining a copyright, Brown disclosed the material in the application process (material that eventually becomes public) in exchange for certain economic protections relative to his work.  *Ali v. Philadelphia City Planning Commission*, 125 A.3d 92, 100 (Pa. Cmwlth. 2015).  Under the Copyright Act, the rights of the copyright holder include the following:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> > (1) to reproduce the copyrighted work in copies or phonorecords;
> >
> > (2) to prepare derivative works based upon the copyrighted work;

---

[8] *See Smith on behalf of Smith Butz, LLC v. Pennsylvania Department of Environmental Protection*, 161 A.3d 1049, 1065-66 (Pa. Cmwlth. 2017); *Crouthamel*, 207 A.3d at 441; *Giurintano*, 20 A.3d at 616-17.

[9] *See Pennsylvania Liquor Control Board v. Burns* (Pa. Cmwlth., No. 1159 C.D. 2019, filed June 16, 2020) (unreported); *Chambers v. Domino's Pizza Inc.*, 1 Pa. D.&C. 4th 20 (1988).

[10]Available at:  https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=5&ti=1,5&Search%5FArg= D%2EA%2EP%2E&Search%5FCode=TALL&CNT=25&PID=OA_fFKcmul4MVYYESquzAb M4g5DL&SEQ=20250224090452&SID=1 (last visited February 25, 2025).

> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]

17 U.S.C. §106(1)-(3). The Copyright Act, however, is not a federal law that exempts materials from disclosure under the RTKL. *Ali*, 125 A.3d at 101. There is a conflict between the Copyright Act and the RTKL with respect to access (*i.e.*, duplication) where (1) the public record in question is protected under a copyright held by a third party, and (2) the local agency does not have the consent of the copyright owner to duplicate the public record in response to a RTKL request. *Id.* at 105. The Copyright Act limits access to a public record only with respect to duplication, not inspection. Thus, a copyrighted public record must still be made available for inspection under the RTKL. *Id.* Accordingly, any copyrighted material used by Brown and DEI staff to instruct or lead any training or programs to the School District staff must be made available to Requester for inspection.[11]

Regarding any non-copyrighted training materials, Brown's affidavits do not provide meaningful factual information. It cannot be ascertained whether the training materials are videos, PowerPoints, outlines, lesson plans, or something else. The affidavits do not explain how this information has value to the School District's competitors; the identity of competitors in the DEI training market; and the likelihood of substantial injury if the information was released. In short, the affidavits are insufficient to determine whether the exemption for confidential proprietary information applies to the requested records.

---

[11] For any records produced by the School District, it may charge the costs for duplication and postage. *See* Section 1307 of the RTKL, 65 P.S. §67.1307.

18

The School District's reliance on *In the Matter of Theresa Darr* is misplaced.[12] PHEAA is quite different from the School District. PHEAA was created by statute, but it is funded by its operations, not by appropriations from the legislature. It competes with banks. Further, PHEAA took extraordinary steps to keep its manual on default loan collections confidential and shared it only with a select number of employees. The *PHEAA* holding does not support the School District, as it believes, but, rather, Requester.

In sum, Brown's certification and supplemental attestation do not provide factual detail sufficient to establish that the exemption for confidential and proprietary information applies to the requested training materials. The affidavits do not even describe the training materials. For this reason, we cannot affirm the trial court's conclusion the training records are confidential proprietary information. Accordingly, we vacate this portion of the trial court's order and remand this matter for an evidentiary hearing.

## Conclusion

For all these reasons, we reverse that part of the trial court's order holding that the training materials constitute trade secret information, and we vacate that part of the trial court's order holding that the training materials are exempt as confidential proprietary information. Accordingly, we remand the matter to the trial court to conduct a hearing on the issue of whether the "confidential proprietary

---

[12] The School District's citation to a previous determination of the OOR finding the training materials to contain confidential proprietary information is not binding on this Court. Our Court has held that decisions of administrative boards or tribunals have no precedential value on this Court. *Scott v. Delaware Valley Regional Planning Commission*, 56 A.3d 40, 44 (Pa. Cmwlth. 2012).

information" exemption contained in Section 708(b)(11) of the RTKL applies to the DEI training materials.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Ann Trethewey, : 
                Appellant : 
                 : 
            v. :      No. 138 C.D. 2024
                 : 
Downingtown Area School : 
District : 

## **O R D E R**

AND NOW, this 25th day of February, 2025, the order of the Chester County Court of Common Pleas is REVERSED, in part, and VACATED, in part. The matter is remanded to the Chester County Court of Common Pleas for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita